**In re the ADOPTION OF T.H., Stephen Hudson, Appellant–Respondent,**

v.

**Steven E. PERRY and Susan J. Perry, Appellees–Petitioners.**

No. 48A02–9611–CV–695.

Court of Appeals of Indiana.

March 19, 1997.

· Steven C. Smith, Patrick R. Ragains, Jane G. Cotton, Smith, Ragains & Cotton, Anderson, for Appellant.

David W. Stone, IV, Wesley D. Schrock, Anderson, for Appellees.

## OPINION

SULLIVAN, Judge.

Appellant, Stephen Hudson (Hudson) appeals the trial court's September 17, 1996 order finding that Hudson had failed to communicate significantly with his son, T.H., for a period of a year or more and that therefore his consent was not required for T.H.'s adoption by Steven and Susan Perry (the Perrys) under I.C. 31–3–1–6(k)(1)(B) (Burns Code Ed. Cum.Supp.1996).

. We affirm.

Hudson presents two issues for review.

1) Whether the trial court erred in determining that the one year period under I.C. 31–3–1–6(k)(1)(B) could include a period before which Hudson's paternity of T.H. had been established; and,

2) Whether the trial court erred in determining that Hudson had not communicated significantly with T.H. as required by the statute.

During the summer of 1991, Hudson returned home from college and began spending time with Tina Jones (Jones). Hudson and Jones had dated in high school, and they saw each other "three or four times" during the summer of 1991. Record at 63. Jones claims they had sex twice during this time, and Hudson claims they had sex once in order to determine whether or not he might be a homosexual.

Hudson returned to school, and Jones called him in September to tell him that she was pregnant. Hudson stated he doubted whether or not the child was his because Jones had informed him that she had slept with someone else that summer. Hudson expressed these concerns to Jones during their phone conversation.

The pair met again in November with their mutual pastor. Hudson again expressed his doubts as to the child's paternity, and Jones left the meeting after becoming upset. Jones and Hudson never really spoke thereafter, although she kept Hudson's parents informed during her pregnancy and called them when T.H. was born. T.H. was born on May 6, 1992, and Jones subsequently married and moved to Florida until June of 1993, when she returned to Indiana.

When Jones returned from Florida, she voluntarily placed T.H. in foster care. Hudson became aware of this fact and made a decision to establish paternity. He filed in August of 1993 and blood tests were scheduled for that December. However, due to some confusion on the part of Hudson's attorney, Hudson was not present for the blood tests, which were canceled. Hudson decided to simply dismiss the paternity action because Tina had regained custody of T.H.

During 1994, T.H. spent some time with Jones, some with Jones' mother and was finally placed with Shirley Rogers for foster care. While with Rogers, T.H. met the Perrys (Steven Perry and Shirley Rogers are siblings). In March of 1995, Jones decided to allow the Perrys to establish guardianship over T.H., which occurred in April.

In June 1995, Jones filed to establish paternity. After the court ordered blood tests, paternity was finally established on December 22, 1995, and Hudson received notice of the test results on February 1, 1996, along with a copy of the decree establishing paternity. In March of 1996, the Perrys filed a petition to adopt T.H. to which Hudson filed an objection. The court found that Hudson's consent for the adoption was not required.

· Under Indiana law,

"a petition to adopt a child under eighteen (18) years of age may be granted only if written consent to adoption has been executed by:

. . .

(2) the mother of a child born out of wedlock and the father of a child whose paternity has been established by:

(A) a court proceeding other than the adoption proceeding. . . ."

I.C. 31–3–1–6(c) (Burns Code Ed. Supp. 1996).

T.H.'s paternity had been established before the adoption petition was filed; therefore, Hudson's consent is required unless one of the exceptions to that requirement applies.

"Consent to adoption is not required from any of the following:

(1) A:

. . . .

(B) parent of a child in the custody of another person, if for a period of at least one (1) year the parent fails without justifiable cause to communicate significantly with the child when able to do so. . . ."

I.C. 31–3–1–6(k).

▪ Hudson argues that, as a matter of law, the one year period cannot begin to run until paternity has been established; therefore he has not failed for one year to communicate with T.H. because he has not been a parent for one year. We disagree.

While we recognize the attractiveness of Hudson's argument, i.e. it is unfair to take away the child of someone who never even knew he had a child, we note that the statute cures such problems. If Hudson had no idea he had fathered a child, that would be "justifiable cause" for not communicating under the statute. In fact, in this case, Hudson expressed serious doubts about being T.H.'s father. These doubts may have explained Hudson's lack of involvement in T.H.'s welfare, but when Hudson filed a paternity action in August of 1993, he evidenced a belief in a distinct possibility that T.H. was his son. Hudson did dismiss the suit, but he cannot successfully maintain that he is interested in T.H. when the boy is in foster care but not when with his mother.

Therefore, we hold that Hudson's consent is not required if he failed to communicate significantly with the child for a one year period from August 1993 until the petition for adoption was filed in March of 1996.

▪ The trial court determined that Hudson had not engaged in significant communication with respect to T.H., and we must agree. When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling "unless the evidence at trial led to but one conclusion and the trial judge reached an opposite conclusion." *In re Adoption of Subzda* (1990) Ind.App., 562 N.E.2d 745, 747. Hudson's own admission is that he saw T.H. four times. After examining the record, this court notes that all four of those times were in 1996. Therefore, from August 1993 until the beginning of 1996, over two years, Hudson never saw T.H.. Hudson also claims that he sent T.H. cards and letters, but the evidence on the record reveals that these communications were sent by Hudson's parents, who did see T.H. quite often.

There is evidence that Hudson was going through a difficult time emotionally during the first few years of T.H.'s life, and that the boy's whereabouts changed often. There is also evidence that Jones did not keep Hudson current with respect to T.H., but these will not excuse the fact that Hudson has indeed failed to communicate significantly with his son. He has presented no evidence concerning any efforts to see his son, and the inconvenience of contacting Jones does not amount to "justifiable cause" for not seeing T.H. nor a showing that he was "not able to do so."

The decision of the trial court is hereby affirmed.

SHARPNACK, C.J., and FRIEDLANDER, J., concur.