James C. IRVIN, Appellant–Respondent,

v.

James B. Kevin HOOD, Appellee–
Petitioner.

No. 87A05–9809–CV–463.

Court of Appeals of Indiana.

May 28, 1999.

Kelly A. Lonnberg, Bob Zoss Law Office, Evansville, Indiana, Attorney for Appellant.

Laurie Baiden Bumb, Keating Bumb Vowels & LaPlante, P.C., Evansville, Indiana, Attorney for Appellee.

### OPINION

MATTINGLY, Judge

James C. Irvin appeals the trial court's determination pursuant to Ind.Code § 31–19–9–8 that his consent to the adoption of his natural child was not required.

We affirm.

### FACTS AND PROCEDURAL HISTORY

Irvin dated Kristin Hood (Kristin) for seven years. During the course of that relationship, Kristin gave birth to a child, J.J.I., on June 29, 1993. Irvin was present at that child's birth and signed an affidavit at the hospital acknowledging paternity of the child. Irvin and Kristin ended their relationship in July of 1994, when J.J.I. was one year old.

Following the termination of his relationship with Kristin, Irvin provided no monetary support for the child. Kristin and J.J.I. lived with Kristin's parents because Kristin could not afford to live on her own and provide for the child. When Kristin requested financial assistance from Irvin on several occasions, Irvin told her he was unable to provide financial support because he had bills to pay for himself.

Kristin married James Hood (Hood) in July of 1997. Hood has contributed to J.J.I.'s support since that time. J.J.I. refers to Hood as his father. On September 18, 1997, Hood filed a petition to adopt J.J.I. At that time, Irvin had maintained no contact with J.J.I. for two years independent of his parents' contacts with the child. Irvin filed an objection to Hood's petition on October 14, 1997.

During the period from July of 1994 to September of 1997, Irvin and Irvin's parents provided J.J.I. with approximately six items of clothing as birthday or Christmas gifts and with occasional meals while the child was visiting Irvin's parents. Irvin's parents were given visitation rights by the trial court, and J.J.I. visited them approximately 24 times during the two years prior to the petition. When Irvin saw J.J.I., it was always in conjunction with that grandparent visitation. Irvin provided no shelter, utilities, medical insurance, or other care or support for the child, nor did he pay any of the child's medical or child care expenses.

Irvin was employed from September of 1996 to September of 1997, earning approximately $320.00 per week. Additionally, Irvin was able to travel abroad to play rugby in England for two months in early 1997.

The trial court held a hearing on June 16, 1998, to determine whether Irvin's consent was required before Hood could adopt J.J.I. The trial court determined that Irvin had failed to provide support for the child and had not maintained significant visitation with the child. The court concluded that Irvin's consent was not required in Hood's adoption of J.J.I. This appeal ensued.

## DECISION AND DISCUSSION

Irvin contends that the trial court erred in granting, without his consent, Hood's petition to adopt J.J.I. Specifically, Irvin contends that the trial court erred in determining that he had failed to maintain communication with J.J.I. and had knowingly failed to provide for the care and support of J.J.I. when he was able to do so.

Ind.Code § 31–19–9–8, which dictates the circumstances under which consent to adoption is not required, provides:

(a) Consent to adoption is not required from any of the following:

(1) A parent or parents if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption.

(2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

(A) fails without justifiable cause to communicate significantly with the child when able to do so; or

(B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

. . .

(b) If a parent has made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent.

The appropriate standard of review on appeal where an adoption petition has been granted is to consider the evidence most favorable to the petitioner and reasonable inferences which can be drawn therefrom to determine whether sufficient evidence exists to sustain the trial court's decision. *In re Adoption of Herman,* 406 N.E.2d 277, 278 (Ind.Ct.App.1980), *reh'g denied.* We will not disturb the trial court's decision in an adoption proceeding unless the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion. *In re Adoption of Ryan L.,* 435 N.E.2d 624, 625 (Ind.Ct.App.1982). On appeal, we will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision. *Id.*

The evidence shows that in the three years before Hood filed the petition for adoption, Irvin provided no monetary support for the child. By his own admission, Irvin failed to provide for or meaningfully contribute to the minor child's food, shelter, utilities, medical care, child care, or to provide any other form of support. In the three years preceding the adoption petition, Irvin provided only six items of clothing for the minor child and some food during the child's visits with the paternal grandparents.

Irvin responded to Kristin's requests that he contribute to the child's support by claiming he had his own bills to pay. Yet, the evidence shows Irvin had the ability to contribute to the care and support of the child. In the three years before the adoption petition was filed, Irvin was employed at various jobs. He was regularly employed for at least one year prior to the filing of the petition, earning approximately $320.00 per week.[1] He was financially able to travel abroad for two months in early 1997 to play rugby. He has offered no legitimate reason why he was unable to provide even minimal support for his child.

Irvin argues that, pursuant to our holding in *Lewis v. Roberts*, a failure to support absent a legal requirement to do so is insufficient to establish abandonment. 495 N.E.2d 810, 812 (Ind.Ct.App.1986). In *Lewis*, the natural father cohabited with the natural mother for three years after the child was born. The natural father was then imprisoned during the time when paternity was legally established. The trial court ordered that Lewis was not required to support the child while he was imprisoned. On appeal, this court held that Lewis' failure to support the child absent the ability and a legal requirement to do so was insufficient to establish abandonment.

Irvin argues that he, similarly, was under no legal requirement to support J.J.I. and that his failure to provide support is insufficient to establish abandonment. We disagree. First, we note that the trial court did not find that Irvin abandoned J.J.I. pursuant to Ind.Code § 31–19–9–8(a)(1); rather, it found, pursuant to Ind.Code § 31–19–9–8(a)(2)(A)–(B), that Irvin had failed to significantly communicate with and provide support for the child. Thus, the trial court's findings were sufficient to support its determination that Irvin's consent to the adoption was not required.

Second, Indiana law imposes upon a parent the duty to support his children. *See State v. Taylor*, 625 N.E.2d 1334, 1335 (Ind. Ct.App.1993). This duty exists apart from any court order or statute. *In re S.T.*, 621 N.E.2d 371, 373 (Ind.Ct.App.1993). In *In re Adoption of T.H.*, we held that it was not necessary that an out-of-wedlock child's paternity have been established in order to commence the one-year period in which the father had to communicate with the child in order to avoid adoption of that child without the natural father's consent. 677 N.E.2d 605, 607 (Ind.Ct.App.1997). We find Irvin's situation analogous. Irvin signed a paternity affidavit after J.J.I. was born acknowledging he was the child's natural father. Thus, Irvin had the duty to support J.J.I. from the time of the child's birth.[2] Irvin's failure to provide support for a child whom he acknowledged as his own establishes that he has failed to support his child "as required *by law* or judicial decree." Ind.Code § 31–19–9–8(a)(2)(B) (emphasis added). Thus, his consent was not necessary for Hood to adopt J.J.I. *See In re Adoption of A.M.K.*, 698 N.E.2d 845, 847 (Ind.Ct.App.1998) (affirming trial court's decision to dispense with natural father's consent in an adoption proceeding under similar circumstances).[3]

Affirmed.

SULLIVAN, J., and RILEY, J., concur.

---

1. Irvin admitted that during this time he did not provide for the care and support of anyone but himself.

2. Under Ind.Code § 16–37–2–2.1(g), a paternity affidavit both establishes paternity and gives rise to parental rights and responsibilities for the person identified as the father. Because the paternity affidavit signed by Irvin at the time of J.J.I.'s birth is not included in the record, we are unable to review what rights or responsibilities that particular document bestowed upon Irvin.

3. Ind.Code § 31–19–9–8 requires only a finding that a parent either fails to communicate with a minor child or fails to support that child, not both. Thus, we need not address Irvin's argument that the trial court erred in finding he failed to communicate with J.J.I., as the trial court's finding that Irvin failed to provide support for J.J.I. is sufficient to support the adoption without Irvin's consent. However, we note that the record indicates that Irvin made no significant efforts on his own to communicate with J.J.I. Rather, it appears he communicated with his child only as a result of the efforts of Irvin's parents, who were given visitation rights by the trial court.