**In the Matter of the ADOPTION OF the Unborn Child of B.W.,**

**Wilfrido Garcia, Appellant–Petitioner,**

**v.**

**David Heine Bos and Janae Herbst Bos, Appellees–Respondents.**

**No. 03A04–0802–CV–107.**

Court of Appeals of Indiana.

July 18, 2008.

Bryan H. Babb, Kelly M. Scanlan, Bose McKinney & Evans, LLP, Indianapolis, IN, Attorneys for Appellant.

Michael P. Bishop, Heather Wysong Zaiger, Cohen Garelick & Glazier, Indianapolis, IN, Attorneys for Appellees.

**OPINION**

BAKER, Chief Judge.

Appellant-petitioner Wilfrido Garcia appeals the trial court's refusal to. set aside its grant of adoption regarding his minor child, T.B., in favor of appellees-respondents David Heine Bos and Janae Herbst Bos (collectively, the "Boses"). Specifically, Garcia argues that he contested the adoption in a timely manner and the facts and circumstances demonstrate that the trial court abused its discretion in concluding that he impliedly consented to the

adoption. Concluding that Garcia failed to follow the proper statutory procedures in contesting the adoption, we affirm the judgment of the trial court.

## FACTS

In September 2006, Barbara Witt was pregnant and expecting her child to be born on or about September 26, 2006. Witt and Garcia had engaged in a short relationship and when Witt discovered that she was pregnant, she told Garcia that she intended to place the child for adoption. Garcia had registered with the Putative Father Registry on August 31, 2006. At some point during the pregnancy, Witt contacted LDS Family Services, an adoption services organization, about having the child adopted.

On September 21, 2006, Witt executed a pre-birth consent form, in which she gave her consent for the Boses to have temporary custody of the child after the birth and during the pendency of the adoption proceedings. Witt also expressed her desire for the Boses to adopt the child on a permanent basis.

The Boses reside in West Lafayette. David Bos is a Ph.D-level scientist employed by Purdue University and Janae Bos is employed by the United States Department of Agriculture. The undisputed evidence established that the Boses have the financial means and ability to care for T.B., and they have not sought any state funds or aid to pay for the adoption. The Boses filed a petition for adoption in Bartholomew Superior Court on September 25, 2006. The petition recited that the father of the child was "believed to be Wilfrido Garcia" who, at the time, was incarcerated in the Bartholomew County Jail in Columbus. Appellant's App. p. 8.

On September 27, 2006, T.B. was born, and Garcia received notice of the pending adoption proceedings on October 2, 2006.

The trial court also entered an order granting the Boses temporary custody of T.B. while the adoption proceedings were pending. At that time, Garcia was incarcerated in the Indiana Department of Correction's Plainfield facility. The notice provided to Garcia indicated that he could contest the adoption in accordance with Indiana Code section 31–19–4–5, and specifically provided that

> This notice complies with I.C. 31–19–4–5 but does not exhaustively set forth a putative father's legal obligations under the Indiana adoption statutes. A person being served notice of this issue should consult the Indiana adoption statutes.

Appellant's App. p. 17. After receiving the notice, Garcia did not file a motion to contest T.B.'s adoption in the Bartholomew Superior Court.

On October 19, 2006, Witt executed a post-birth consent to adoption in favor of the Boses. The trial court again entered an order granting temporary custody of T.B. to the Boses, which directed Columbus Regional Hospital—T.B.'s birthplace—to turn T.B. over to the Boses, their attorney, or a representative of the adoptive services agency.

On October 31, 2006, Garcia filed a pro se "Petition to Establish Paternity and Contest Adoption of Unknown Minor Child" in the Bartholomew Circuit Court. Appellant's App. p. 65. Witt was served with notice of that action, and on November 6, 2006, Witt's counsel of record in the adoption proceedings filed an appearance and a motion to intervene in the paternity action on behalf of LDS Family Services. As a result, the paternity action and the adoption proceedings progressed simultaneously in two different Bartholomew County courts.

On January 22, 2007, attorney James Kilburn entered an appearance on Garcia's

behalf in the paternity action. The trial court permitted LDS Family Services to intervene in the action, and Witt subsequently moved to dismiss Garcia's paternity petition. Following a hearing on March 9, 2007, the trial court denied the motion to dismiss and ordered the parties to submit to DNA testing at Garcia's expense.

The hearing on the paternity petition was held on June 21, 2007, which Witt and Garcia attended. At that time, T.B. was made a party to the proceedings. On June 25, 2007, the Boses moved for a final hearing on their adoption petition. That motion was served on Kilburn, who had been included on the distribution list of the order that set the final adoption hearing.

On June 28, 2007, the Bartholomew Circuit Court entered an order determining that Garcia's paternity of T.B. had been established through DNA testing. Thereafter, on August 23, 2007, the Boses and Witt appeared for the final adoption hearing. Garcia did not appear, and Witt testified that Garcia had been provided with notice of the final adoption hearing. It was also established that nowhere in the adoption court's file was it indicated that Garcia had contested the adoption in the Bartholomew Superior Court.

At the adoption hearing, the Boses requested the trial court to find that Garcia impliedly consented to the adoption. More specifically, Witt's counsel admitted into evidence a copy of the Chronological Case Summary from the paternity action that Garcia had filed in the Bartholomew Circuit Court, and argued as follows:

[Exhibit 2] shows that, as of the date of service this Court received, I sent notice of this hearing, that Mr. Kilburn was still, in fact, Mr. Garcia's attorney and we are asking that . . . pursuant to the adoption statute that Mr. Garcia, when he received notice in the DOC, had thirty days to do two things. He had to file [a] paternity action, and he had to petition this Court to intervene or to contest the adoption. He had not, to our knowledge, has not done that, we checked the Court's file yesterday, and I[saw] nothing there. Even given all the facts in the most favorable condition to Mr. Garcia he, at the very minimum had thirty days from the date his paternity was established to come forth in this adoption to contest, which he has not. So we would ask the Court to find that he is, by his failure to file good contestation of this hearing that he irrevocably consented to this adoption.

Appellant's App. p. 61–63. Thereafter, the trial court entered the following order, granting the adoption and terminating Garcia's parental rights as to T.B.:

That IC 31–19 et al [sic] applies and that Wilfrido Garcia has failed to timely and properly file a motion with this Court to contest the adoption as required by IC 31–19–10–1(b).

That pursuant to IC 31–19–9–12(1)(A)(B), Wilfrido Garcia's consent is irrevocably implied because he failed to file a motion in accordance with IC 31–19–10.

That as of August 25, 2006 no putative father had registered with the Indiana State Department of Health alleging parental rights in the child born on September 27, 2006 to Barbara Witt.

That it is in the best interest of the child that the Petitioner's Petition for Adoption be granted.

Appellant's App. p. 5–6. Garcia now appeals.

## DISCUSSION AND DECISION

### I. Standard of Review

In general, the appropriate standard of review on appeal where an adoption petition has been granted is to con-

sider the evidence most favorable to the petitioner and reasonable inferences that can be drawn therefrom to determine whether sufficient evidence exists to sustain the trial court's decision. *Irvin v. Hood,* 712 N.E.2d 1012, 1013 (Ind.Ct.App. 1999). We will not disturb the trial court's decision in an adoption proceeding unless the evidence at trial led to but one conclusion and the trial court reached an opposite conclusion. *Id.* On appeal, we will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision. *Id.*

■■ We also note that when the interpretation of a statute is at issue, a question of law arises that is reserved for the courts. *Shepherd v. Carlin,* 813 N.E.2d 1200, 1203 (Ind.Ct.App.2004). We review questions of law under a de novo standard and owe no deference to a trial court's legal conclusions. *Id.* The primary goal in statutory construction is to determine, give effect to, and implement the legislature's intent. *Cox v. Cantrell,* 866 N.E.2d 798, 805 (Ind.Ct.App.2007), trans. *denied.*

## II. Garcia's Claims

■ Garcia contends that the adoption order must be set aside because the evidence demonstrated that he established the paternity of T.B. in a timely manner. Moreover, Garcia claims that the trial court erred in concluding that he impliedly consented to the adoption.

In resolving this issue, we initially set forth the provisions of Indiana Code section 31–19–4–5, which applies to the "Notice to the Named Father." Specifically, that notice must include the following language:

If [the putative father]:

(1) does not file:

(A) a motion to contest the adoption; or

(B) a paternity action under I.C. § 31–14;

within thirty (30) days after service of this notice; or

(2) after filing a paternity action under I.C. § 31–14 fails to establish paternity; the above named court will hear and determine the petition for adoption. His consent will be irrevocably implied and he will lose his right to contest the adoption or the validity of his implied consent to the adoption.

This statute further provides that "This notice complies with IC 31–19–4–5 but does not exhaustively set forth a putative father's legal obligations under the Indiana adoption statutes. *A person being served with this notice should consult the Indiana adoption statutes.*" (Emphasis added).

The notice that Garcia received on October 2, 2006, substantially mimicked the language of Indiana Code section 31–19–4–5. Appellant's App. p. 16–17. We also note that Indiana Code section 31–19–10–1(a) and (b) provide:

(a) Except as provided in subsection (c), only a person entitled to notice of adoption under I.C. § 31–19–4 or I.C. § 31–19–4.5 may contest an adoption.

(b) A person contesting an adoption *must file a motion to contest the adoption with the court not later than thirty (30) days after service of notice of the pending adoption.*

(Emphasis added).

Indiana Code section 31–19–10–1 is codified in Chapter 31, Article 19 of the Indiana Code, which addresses family, adoption, and juvenile law issues. However, Indiana Code section 31–19–1–2 specifi-

cally addresses a court's jurisdiction in adoption matters and states:

(a) This section applies to each Indiana county that has a separate probate court.

(b) The probate court has exclusive jurisdiction in all adoption matters.

While this provision governs jurisdiction over adoptions in those counties where there is a separate probate court, we note that Bartholomew County has no separate probate court. Moreover, Bartholomew County Administrative Rule 17–1(d) provides that "adoption . . . cases may be filed in any court." And Bartholomew County Administrative Rule 17–1(c) provides that "paternity cases shall be filed in Circuit Court."

Also relevant here is Indiana Code section 31–19–9–12, which provides that:

A putative father's consent to adoption is irrevocably implied without further court action if the putative father:

(1) fails to file:

(A) a motion to contest the adoption in accordance with IC 31–19–10; and

(B) a paternity action under IC 31–14; within thirty (30) days after service of notice under IC 31–19–4;

(2) having filed a motion to contest the adoption in accordance with IC 31–19–10, fails to appear at the hearing set to contest the adoption;

(3) having filed a paternity action under IC 31–14, fails to establish paternity in the action; or

(4) is required to but fails to register with the putative father registry established by IC 31–19–5 within the period under IC 31–19–5–12.

Additionally, Indiana Code section 31–9–2–100, defines the term "putative father" for purposes of Indiana Code section 31–19 et seq. as follows:

A male of any age who is alleged to be or claims that he may be a child's father but who:

(1) is not presumed to be the child's father under I.C. § 31–14–7–1(1) or I.C. § 31–14–1(2); and

(2) has not established paternity of the child:

(A) in a court proceeding; or

(B) by executing a paternity affidavit under I.C. § 16–37–2–2.1; before the filing of an adoption petition.

In construing these statutes, because the adoption action for T.B. was filed in Bartholomew Superior Court and the adoption of T.B. is what Garcia sought to contest, he was required to file his motion to contest T.B.'s adoption in Bartholomew Superior Court. Put another way, the provisions of Indiana Code section 31–19–9–12 required Garcia to file a paternity action and a motion to contest the adoption in the adoption court.

Garcia was served with the "Petition for Adoption and Notice of Named Father" on October 2, 2006. Appellant's App. p. 20. Therefore, pursuant to the relevant statutes, Garcia, as the putative father, had until November 1, 2006, to file a motion to contest the adoption and the paternity action. Although Garcia filed his petition to establish paternity in the paternity court within the required thirty days following service, he did not file a motion to contest T.B.'s adoption in the proper court by November 1, 2006. Moreover, as of November 1, 2006, Garcia had not been established as T.B.'s biological father because he filed his paternity action only one day earlier, and the adjudication establishing Garcia as T.B.'s biological father was not made until June 28, 2007. Appellant's App. p. 67. Therefore, according to Indiana Code section 31–19–9–12(1) and –12(2), Garcia, as T.B.'s putative father,

failed to fulfill both statutory requirements to prevent his irrevocably implied consent to T.B.'s adoption.

Notwithstanding these statutory requirements, Garcia maintains that Indiana Code sections 31–19–4–5 and –9–12 are in apparent conflict because 9–12 requires the putative father to file a motion to contest the adoption *or* to initiate a paternity action. Appellant's Br. p. 16. However, even assuming for the sake of argument that a conflict exists among the statutes, it is undisputed that Garcia did not file his motion to contest T.B.'s adoption in the adoption court in a timely manner. Moreover, we note that when there is an apparent conflict between two statutes, this court has held that it is our role to examine and harmonize them if possible. *State v. Universal Outdoor, Inc.*, 880 N.E.2d 1188, 1191 (Ind.2008). Also, in *Simmons v. State*, 773 N.E.2d 823, 826 (Ind.Ct.App.2002), this court observed:

> As a general rule, there is a presumption that the Legislature in enacting a particular piece of legislation has in mind existing statutes covering the same subject. *Id.* "When two statutes or two sets of statutes are apparently inconsistent in some respects, and yet can be rationalized to give effect to both, then it is our duty to do so. It is only when there is irreconcilable conflict that we can interpret the legislative intent to be that one statute gives way to the other." *Wright v. Gettinger,* 428 N.E.2d 1212, 1219 (Ind.1981). Furthermore, the implied repeal of statutes is disfavored under Indiana law. *Waldridge v. Futurex Industries, Inc.,* 714 N.E.2d 783, 785 (Ind.Ct.App.1999), *trans. denied* (2000). "We repeal statutes by implication only where a later statute is so repugnant to and inconsistent with an earlier statute that it must be assumed the legislature did not intend both statutes to stand."

*Id.* If at all possible, we will adopt a construction that gives effect to both statutes. *Id.*

As indicated above, to avoid the effect of an irrevocably implied consent, the named father, in accordance with Indiana Code section 31–19–9–12, must file a paternity action and a motion to contest an adoption within thirty days after service of notice regarding the same. Although the provisions of Indiana Code section 31–19–4–5 appear to conflict with those of Indiana Code section 31–19–9–12(1) at first blush, a further analysis reveals that a putative father's legal obligations under the Indiana adoption statutes are not exhaustively set forth in the Notice. Specifically, as set forth above, Indiana Code section 31–19–4–5 states "[a] person being served with notice of this issue should consult the Indiana adoption statutes." That said, Indiana Code sections 31–19–4–5 and 31–19–9–12 can be harmonized and rationalized to give effect to both statutes, given the recognition of the named father's obligation to further consult the Indiana adoption statutes as set forth in Indiana Code section 31–19–4–5. Therefore, Garcia's contention that the adoption must be set aside in light of an irreconcilable statutory conflict fails.

Finally, we note that Garcia directs us to *In re Adoption of A.N.S.*, 741 N.E.2d 780 (Ind.Ct.App.2001), in support of his position that "[i]t should not be fatal to his plea for a determination of parental rights that he filed his petition contesting adoption in Circuit Court rather than Superior Court." Appellant's Br. p. 20. However, unlike the circumstances in *A.N.S.*, in which there was a collateral attack on the paternity court's judgment, Garcia is attacking the adoption decree in light of his own procedural failures and the paternity

action that he filed *after* the initiation of the adoption proceedings.

In *A.N.S.*, the mother, Laura, gave pre-birth notice to Matthew, the presumed father, of her intent to place her unborn child for adoption. *Id.* at 781–82. On March 24, 1997, Matthew was served with the notice, and he subsequently filed a paternity action in the Allen Superior Court thirty-eight days after receiving notice. *Id.* Thereafter, Laura moved for summary judgment in Matthew's paternity action on the basis of the untimely filing of the paternity action. In July 1997, Matthew registered with the Putative Father Registry, and on October 20, 1997, the paternity court denied Laura's motion for summary judgment.

Laura subsequently married, and on November 10, 1997, Laura and her new husband filed a petition to adopt the child in a different Superior Court in Allen County. The adoption petition alleged that Matthew had failed to timely file his paternity action and irrevocably consented to A.N.S.'s adoption. On February 2, 1998, Matthew moved to intervene in the adoption action. On that same day, the adoption court entered an order finding that Matthew failed to comply with "the statute within the thirty days" and found that his consent to the adoption was "irrevocably implied." *Id.*

Thereafter, the adoption court found that Matthew was A.N.S.'s biological father. In February 1999, the guardian ad litem, who had been appointed in the paternity action, moved to consolidate the paternity and adoption proceedings, yet there was no evidence that a ruling was entered. In January 2000, after reassignment of the adoption case to a different court, Matthew filed a motion to reconsider the February 2, 1998, order regarding the determination that he had impliedly consented to A.N.S.'s adoption.

Following a hearing, the adoption court granted Matthew's motion to reconsider and concluded that "the irrevocable consent was inequitable based upon Matthew's eight-day delay in filing his paternity action." *Id.* Thereafter, Laura and her husband filed an interlocutory appeal that centered on "the question of whether Matthew filed his paternity action in a timely manner." *Id.* at 784.

On appeal, this court observed that "[t]he paternity action, filed *prior* to the adoption proceedings, has concluded in a determination of the paternity issue." *Id.* (emphasis added). In essence, Laura and her husband were attempting to appeal "the adoption court's recognition of the paternity determination," and we concluded that such was a "collateral attack on the paternity court's decision within the adoption proceedings." *Id.* As a result, we found that Laura's appeal from the adoption matter "with regard to Matthew's ability to establish paternity was moot." *Id.* at 787.

Here, the Boses filed the adoption proceedings *prior* to the initiation of Garcia's paternity action. In *A.N.S.*, the mother and her new husband filed their adoption proceedings over six months *after* the initiation of the father's paternity action. *Id.* at 782. As a result, we find that Garcia's reliance on *A.N.S.* is misplaced and is an attempt to circumvent the statutes that required him to file both a paternity action and a motion to contest the adoption in the proper court. Thus, we find *A.N.S.* inapposite to the circumstances here, and Garcia's claim fails.

### CONCLUSION

In light of our discussion above, we find that Garcia failed to follow the statutory requirements to contest T.B.'s adoption. Thus, his consent to the adoption is irrevo-

cably implied. Therefore, we conclude that the trial court properly entered the decree of adoption of T.B. in favor of the Boses.

The judgment of the trial court is affirmed.

RILEY, J., and ROBB, J., concur.