**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

Oct 25 2013, 5:48 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**ANA M. QUIRK**
Public Defender
Muncie, Indiana

ATTORNEY FOR APPELLEES:

**DAVID W. STONE IV**
Stone Law Office & Legal Research
Anderson, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN THE ADOPTION OF B.R. | ) | |
| | ) | |
| F.R., | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| vs. | ) | No. 18A02-1302-AD-185 |
| | ) | |
| J.B. and E.B., | ) | |
| | ) | |
| Appellees. | ) | |

APPEAL FROM THE DELAWARE CIRCUIT COURT
The Honorable Marianne L. Vorhees, Judge
Cause No. 18C01-1208-AD-28

**October 25, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**BROWN, Judge**

F.R. ("Appellant"), the biological father of B.R., appeals the trial court's order granting the petition for adoption of B.R. by J.B. ("Adoptive Father"). Appellant raises two issues, which we revise and restate as whether the court erred in finding that his consent to the adoption was not required. We affirm.

PROCEDURAL HISTORY

B.R. was born in June 2003 and lives with his mother, E.B. ("Mother"), and Adoptive Father in Eaton, Delaware County, Indiana. On August 21, 2012, Adoptive Father filed a petition for adoption and Mother filed a consent to the adoption. In the petition, Adoptive Father alleged that Appellant is the natural father of B.R. and that his consent was not necessary as he had not had meaningful or consistent contact with B.R. and had not provided any meaningful support. On January 15, 2013, the court held a hearing to determine whether Appellant's consent was required at which the court admitted evidence and testimony from, among others, Appellant, Mother, and Adoptive Father.

On January 22, 2013, the court entered its findings of fact and order that Appellant's consent was not required and that it is in B.R.'s best interests for Adoptive Father to adopt him. With respect to Appellant's failure to communicate significantly with B.R., the court found that "[t]he parties had few disputes about the basic time-line involved," that Appellant "admitted from June, 2008, on, his contact was sporadic," that in July 2011 Appellant attended one baseball game and saw B.R. at Mother's home for about an hour, each at Mother's request, that in March 2012 Appellant sent a letter to Mother stating his love for and desire to see B.R., that in May 2012 Appellant filed a

2

petition to establish custody, visitation, and support, and that on August 11, 2012 Mother and Adoptive Father married. Appellant's Appendix at 49. The court found that Appellant had the ability at all relevant times to contact B.R. through Mother, who had lived in the same home and had the same telephone number for over thirty years, that Mother and her family did not try to keep Appellant away from B.R., that they encouraged and wanted Appellant to visit, that Appellant simply was not motivated to visit and build a relationship with B.R. until the petition for adoption was filed, and that Adoptive Father carried his burden to prove that Appellant failed for one year prior to the petition to communicate significantly with B.R. when able to do so, without justifiable cause. The court found that, even starting the one year period from May 31, 2012, there were "only a few *token* attempts by [Appellant] to visit [B.R.], both of which [Mother and Adoptive Father] initiated and insisted [Appellant] should do," that the July 2011 visits "do not constitute *significant* contact of the type contemplated by the statute," and that "[e]ven these two physical contacts with maybe another two visits outside [Mother's] house within that year period are not the significant contact that the statute requires." Id. at 51. The court further found that all of the parties live in Eaton, Indiana, which is a very small community, that it would not have been very difficult for Appellant "to put some effort into finding out the activities in which [B.R.] was involved," that Appellant had the ability to contact B.R., and that he had no justifiable cause for not contacting B.R. Id. The court found that Appellant's consent was not required for this reason.

With respect to Appellant's failure to pay support, the court noted that although no court had ordered Appellant to pay support, he had a legal duty to do so, that Appellant

3

admitted to steady employment for several years, into the year 2011, that he earned $10.45 per hour for a forty hour work week in one position, that Appellant admitted he had not paid any money to Mother for B.R. when he had the ability to do so, and that Appellant admitted he knew he had a duty to help support B.R. even without being ordered by a court to do so. The court noted that Appellant later testified that he had given money to Mother in the past but none in the last few years, and the court found his testimony lacked any credibility. The court further found that the evidence showed that Appellant knowingly failed to provide for B.R.'s care and support when able to do so as required by law and that Appellant's consent was not required for this reason as well.

The court further found that it would be in B.R.'s best interests for Adoptive Father to adopt him, that B.R. and Adoptive Father "are very well bonded," that B.R. sees Adoptive Father "as a 'Dad,'" that they interact like a father and son, and that "they play ball together; do homework together; watch television together; and play video games together." Id. at 52. The court found that "[a]lthough [Appellant] has good intentions, and he obviously loves [B.R.], he has had numerous opportunities to become part of [B.R.'s] life and has not taken advantage of those opportunities." Id. Additionally, the court found that "it would be in [B.R.'s] best interests to terminate his parental relationship with [Appellant] now, while [B.R.] and [Adoptive Father] have plenty of time to build the strong father-son relationship that will enable [B.R.] to grow and develop into a responsible, emotionally stable young man" and that "[g]iving [Appellant] more time to demonstrate he has the desire to be a father, when he has demonstrated little effort to this point in time, could cause future harm to [B.R.'s] development." Id. at 53.

4

The court also found that "it would not be in [B.R.'s] best interests to assume [Appellant] will become part of his life if the Court denies the petition to adopt, when [Appellant] has not demonstrated any consistent presence in [B.R.'s] life." Id.

Following a final hearing, the court entered a decree of adoption on February 26, 2013. The relevant evidence presented at the hearing is discussed below.

ISSUE AND STANDARD OF REVIEW

The issue is whether the trial court erred in finding that Appellant's consent to the adoption of B.R. by Adoptive Father was not required. When reviewing the trial court's ruling in an adoption proceeding, we will not disturb that ruling unless the evidence leads to but one conclusion, and the trial court reached the opposite conclusion. In re Adoption of K.S., 980 N.E.2d 385, 387 (Ind. Ct. App. 2012) (citing In re Adoption of M.A.S., 815 N.E.2d 216, 218 (Ind. Ct. App. 2004)). We will not reweigh the evidence, but instead will examine the evidence most favorable to the trial court's decision together with reasonable inferences drawn therefrom, to determine whether sufficient evidence exists to sustain the decision. Id. The decision of the trial court is presumed to be correct, and it is the appellant's burden to overcome that presumption. Id. Recognizing the fundamental importance of the parent-child relationship, our courts have strictly construed the statute to preserve that relationship. Id. However, even the status of natural parent, though a material consideration, is not one which will void all others, and under carefully enumerated circumstances, the statute allows the trial court to dispense with parental consent and allow adoption of the child. Id.

DISCUSSION

Appellant contends that the court erred in finding that his consent was not required pursuant to Ind. Code § 31-19-9-8. Ind. Code § 31-19-11-1 provides that the trial court "shall grant the petition for adoption and enter an adoption decree" if the trial court hears evidence and finds, in part, that "the adoption requested is in the best interest of the child" and "proper consent, if consent is necessary, to the adoption has been given." Ind. Code § 31-19-9-8 provides:

(a)    Consent to adoption, which may be required under section 1 of this chapter, is not required from any of the following:

* * * * *

(2)    A parent of a child in the custody of another person if for a period of at least one (1) year the parent:

(A)    fails without justifiable cause to communicate significantly with the child when able to do so; or

(B)    knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.

(3)    The biological father of a child born out of wedlock whose paternity has not been established:

(A)    by a court proceeding other than the adoption proceeding; or

(B)    by executing a paternity affidavit under IC 16-37-2-2.1.

* * * * *

(b)    If a parent has made only token efforts to support or to communicate with the child, the court may declare the child abandoned by the parent.

6

The provisions of Ind. Code § 31-19-9-8 are written in the disjunctive and thus each provide independent grounds for dispensing with parental consent. In re Adoption of K.S., 980 N.E.2d at 388. Regardless of which provision is relied upon, adoption is granted only if it is in the best interests of the child. Id. (citing Ind. Code § 31-19-11-1(a)).

Appellant argues that the evidence does not establish that he failed to communicate significantly with B.R. for at least one year or knowingly failed to provide for the care and support of B.R. when able to do so. Appellant argues that he attended B.R.'s baseball game and visited B.R. at Mother's home in July 2011, that he sent a letter to Mother requesting to see B.R. in March 2012, and that Mother ignored the letter and did not contact him. Appellant further argues that Mother had not considered adoption until after she received a petition filed by Appellant requesting that custody, support, and visitation be determined in court. In addition, Appellant asserts that a support order had not been entered whereby he was ordered to pay a certain amount in child support to Mother, and that, although there was some evidence he worked at the time B.R. was born, he had drawn unemployment during 2011 and was unemployed at the time of the hearing. He also states that he was indigent and appointed a public defender, and thus that there was no evidence as to whether his income was steady or sporadic and what his necessary and reasonable expenses were during the year in question. Appellant also argues that the court erred in determining that it was in the best interest of B.R. to be adopted by Adoptive Father, and there was no evidence that, when B.R. did see Appellant, there were any problems or any harm to B.R. Appellant also notes a lack of evidence as to

7

what B.R. thought about the adoption or about ending his relationship with Appellant, or the effect on B.R. of terminating the parental relationship.

Adoptive Father maintains that the court did not err in finding that Appellant's consent to the adoption was unnecessary. Adoptive Father initially argues that Appellant had not signed a paternity affidavit, that paternity had not been established by a court proceeding, and thus that Appellant's consent was not required under subsection (3) of Ind. Code § 31-19-9-8(a) and it is unnecessary to even consider his arguments. With respect to subsection (2) of Ind. Code § 31-19-9-8(a), Adoptive Father argues that Appellant repeatedly testified that he had the ability to pay support for many years but had not done so and that the duty of a parent to support his children exists apart from any court order or statute. He further maintains that Appellant had no contact with B.R. after August of 2011, that Appellant has had about ten contacts with B.R. since 2003, that the contact only occurred when Mother requested such, that each of the visits were around an hour in length, and that Appellant lived within a mile of Mother. He also maintains that Appellant had the ability to communicate with B.R. but simply chose not to do so.

Upon questioning at the hearing, Appellant indicated that he was the biological father of B.R., that he did not sign a paternity affidavit when B.R. was born, and that paternity had not been established through the courts. Further, Appellant states that he and Mother were not married and did not marry subsequent to the birth of B.R. Thus, consent to adoption of B.R. by Adoptive Father was not required pursuant to Ind. Code § 31-19-9-8(a)(3) (providing in part that consent to adoption is not required from a

8

biological father of a child born out of wedlock whose paternity has not been established by a court proceeding or paternity affidavit).

Ind. Code § 31-19-9-8(a)(2) provides that consent to adoption is not required from a parent of a child in the custody of another person if, for a period of at least one year, the parent "(A) fails without justifiable cause to communicate significantly with the child when able to do so; or (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree." This court has held that "[t]he subsections regarding significant communication, and regarding failure to support are framed in the disjunctive" and that "[t]hus, demonstrating either of the two criteria is sufficient to establish that the adoption without parental consent may move forward." In re Adoption of J.P., 713 N.E.2d 873, 875 (Ind. Ct. App. 1999). In In re Adoption of J.P., we noted that "[s]ubsection (b) of the statute specifically allows a court to find abandonment despite token communication by the parent." Id. We further noted: "The thrust of the statute is to foster and maintain communication between non-custodial parents and their children, not to provide a means for parents to maintain just enough contact to thwart potential adoptive parents'[] efforts to provide a settled environment to the child. The significance of the communication is not measured in terms of units of visits." Id. at 876 (citations omitted).

With respect to Appellant's failure to communicate significantly with B.R., the record reveals that Appellant's contact with B.R. was nonexistent at times and at best sporadic. Mother testified that Appellant had no contact with B.R. since August 2011, and that, during the previous year, Appellant had not contacted her for any kind of

parenting time with B.R. Mother testified that she had lived at the same residence and had the same home phone number for thirty-one years and that Appellant had been to her residence and had her home phone number available to him. Mother testified that, since B.R. was born in 2003, Appellant had contact with B.R. "[r]oughly ten" times, that the contact occurred "only because [she] contacted [Appellant] to come see [B.R.]," and that the visits would last "maybe an hour." Transcript at 8, 30. Mother testified that she believed the last time Appellant had any contact with B.R. was when he went to one of B.R.'s baseball games and visited B.R. at Mother's residence for about one hour in July 2011 after Mother and Adoptive Father went to Appellant's house and encouraged him to see B.R. more frequently. Mother also testified that she told Appellant that he could visit B.R. anytime and encouraged him to make phone calls if he could not visit. Mother stated that she was not aware of any phone calls or other attempts by Appellant to contact B.R. following those visits and that she never at any time denied Appellant contact with B.R. In March 2012, Appellant sent a letter to Mother stating that he loves and thinks about B.R. and that he wished to see him. Appellant also indicated in the letter that he would not write to Mother anymore, that he had taken drug and alcohol classes, and that he was out of jail. Mother did not respond to the letter. Also, in May 2012 Appellant filed a petition to establish custody, visitation, and child support. Mother testified that she believed Appellant wrote the letter "trying to make it look like he's concerned about his child," that Appellant did not wish to see B.R. or pay support, and that he filed the petition because "the State got involved" and because "he doesn't want other people to look at him and think that he . . . was the bad guy . . . ." Id. at 41-42.

10

Appellant testified that he knew where Mother lived and had her phone number, that there were two periods of time that he lived in close proximity to B.R., namely, at one location approximately a mile from B.R.'s home and at another location approximately a quarter of a mile from B.R.'s home. Appellant stated that he had pled guilty to domestic battery as a misdemeanor, that the victim was his girlfriend with whom he currently lived, and that he was required to take parenting, domestic violence, and drug and alcohol classes as conditions of probation.

Based upon the evidence, we cannot say that the court erred in finding that, for a period of at least one year, Appellant failed without justifiable cause to communicate significantly with the child when able to do so. See In re Adoption of J.P., 713 N.E.2d at 876 (holding that evidence was presented that fairly consistent, but brief, monthly visits by a parent with the child were not meaningful and that the trial court did not err in determining that the parent's consent was not required pursuant to Ind. Code § 31-19-9-8); In re Adoption of T.H., 677 N.E.2d 605, 607 (Ind. Ct. App. 1997) (holding that the trial court did not err in determining that the parent had not engaged in significant communication with the child where the parent saw the child four times and did not see the child for over two years, and noting that, while the parent was going through a difficult time emotionally, the child's whereabouts changed often, and the other parent did not keep the parent current, the parent presented no evidence concerning his efforts to see his child, and the inconvenience of contacting the other parent did not amount to justifiable cause for not seeing the child nor a showing that the parent was not able to do so).

With respect to Appellant's failure to provide support, the trial court found that the evidence showed that Appellant knowingly failed to provide for B.R.'s care and support when able to do so as required by law and that Appellant admitted that he knew he had a duty to support B.R. even without being ordered by a court to do so. We note that "Indiana law imposes a duty upon a parent to support his children" and that "[t]his duty exists apart from any court order or statute." In re Adoption of M.A.S., 815 N.E.2d 216, 220 (Ind. Ct. App. 2004) (citing Irvin v. Hood, 712 N.E.2d 1012, 1014 (Ind. Ct. App. 1999)). As a result, even absent a support order, Appellant was required to provide support for B.R., and the record reveals that Appellant failed to pay child support for nine years. Appellant testified that he was employed for about four years at Meridian Foods making, at his latest rate, $9.45 per hour, that during that time he did not pay support but had the ability to do so, that he later worked for Gruwell and Son for about a year making approximately $10.00 per hour for about twenty hours a week, that during that time he did not pay support but had the ability to do so, that he then worked for The Cleaning Company for about eighteen months making, at his latest rate, $10.45 per hour for forty hours per week, and that during that time he did not pay support but again had the ability to do so. Appellant indicated that he received unemployment compensation in 2011 following his employment with The Cleaning Company in the amount of $260 per week, that he did not pay child support for B.R. during that time, and that he had the ability to do so. When asked "[d]o you think you have to have a court order to pay child support," Appellant replied "I don't think so," and when asked "[d]o you believe that you have a duty to pay support for your child," he testified "I do have a duty to take care of my child,

12

yes." Transcript at 114. Appellant testified that he gave Mother money in the past when she needed it but did not remember the approximate time he did so, how much he gave her, or the reason Mother needed it. The trial court found Appellant's testimony was not credible and that, even if Appellant had given some money to Mother, that fact did not alter the court's ultimate determination. Based upon the record and under the totality of the circumstances, we cannot say that the court erred in finding that Appellant was able to provide support for B.R. but knowingly failed to do so. See In re Adoption of M.A.S., 815 N.E.2d at 221 (noting the parent's employment and that the trial court found that the parent had sufficient income to pay something to meet his legal duty to pay support for the child, and concluding that, under the totality of the circumstances, the parent was able to provide support for the child but failed to do so); Irvin, 712 N.E.2d at 1014 (holding that the parent's consent to an adoption was not necessary because he had failed to provide support for the child for more than one year).

In addition, as stated above adoption is granted only if it is in the best interests of the child. See Ind. Code § 31-19-11-1(a). The trial court found that "[a]lthough [Appellant] has good intentions, and he obviously loves [B.R.], he has had numerous opportunities to become part of [B.R.'s] life and has not taken advantage of those opportunities." Appellant's Appendix at 52. Adoptive Father testified that he had been and would be a father to B.R. every day and that it is in B.R.'s best interests for Adoptive Father to adopt him because it would provide the stability of a father in B.R.'s life. Adoptive Father testified that he filled the role of father, talked to B.R. about school, helped him with his homework, played video and board games with him, and went to

B.R.'s sporting events and school functions. Adoptive Father testified that he had bonded with B.R., that they act like father and son, that B.R. calls him "dad," and that B.R. is happy and healthy when he is with Adoptive Father. Transcript at 49. Adoptive Father also testified that he had two children with Mother and that B.R. is very close to the other children. Mother's testimony regarding Adoptive Father's relationship with B.R. was consistent with Adoptive Father's testimony. The evidence most favorable to the court's determination, as described above and in the record, demonstrates that Appellant had many years to develop a relationship with B.R. and did not do so. Based upon the evidence most favorable to the trial court's decision together with reasonable inferences therefrom, we cannot say that the evidence leads to a conclusion opposite that reached by the trial court regarding the best interests of B.R. See In re Adoption of M.A.S., 815 N.E.2d at 222 (affirming the adoption after finding that the consent of the parent challenging the adoption was not required under Ind. Code § 31-19-9-8 and that the parent's arguments that the adoption was not in the best interests of the child were unpersuasive); see also In re Adoption of J.P., 713 N.E.2d at 876 (noting that the mother "viewed the time J.P. was removed from [mother's] home, which included virtually all but the first eighteen months of J.P.'s life, as a holiday from parental responsibilities" and that the mother "would like to be excused from parental duties, yet retain the rights and benefits of motherhood").

CONCLUSION

Based upon the record, we cannot say that the evidence leads to but one conclusion and the trial court reached an opposite conclusion. Appellant's paternity had

14

not been established by a court proceeding or by affidavit, and the court did not err in finding that Appellant, for a period of at least one year, failed to provide support for B.R. or failed to communicate significantly with B.R. Accordingly, Appellant's consent to the adoption of B.R. by Adoptive Father was not required pursuant to Ind. Code § 31-19-9-8(a)(2) or (3). See In re Adoption of M.A.S., 815 N.E.2d at 221 (holding the parent's consent to the adoption was not required); In re Adoption of J.P., 713 N.E.2d at 876 (concluding the parent's consent to the adoption was not required). Also, Appellant has not demonstrated that it is not in B.R.'s best interests that the court grant the adoption petition.

For the foregoing reasons, we affirm the trial court's order of adoption.

Affirmed.

NAJAM, J., and MATHIAS, J., concur.