## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Nov 18 2020, 7:39 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

---

ATTORNEY FOR APPELLANT

Ryan D. Bower
New Albany, Indiana

ATTORNEY FOR APPELLEE

Alice Bartanen Blevins
Salem, Indiana

---

## IN THE
# COURT OF APPEALS OF INDIANA

---

W.M.,

*Appellant-Petitioner,*

v.

H.T.,

*Appellee-Respondent.*

November 18, 2020

Court of Appeals Case No.
20A-AD-403

Appeal from the Washington
Circuit Court

The Honorable Larry Medlock,
Judge

Trial Court Cause No.
88C01-1903-AD-7, 88C01-1903-
AD-8, & 88C01-1903-AD-9

**Riley, Judge.**

# STATEMENT OF THE CASE

Appellant-Petitioner, W.M. (Father), the biological father of J.K.N.M., Z.L.L.M., and M.J.R.M. (collectively, Children), appeals the trial court's Orders, granting the petition for adoption of the Children by H.T. (Adoptive Mother).

We affirm.

# ISSUE

Father raises one issue on appeal, which we restate as the following: Whether the trial court abused its discretion in granting Adoptive Mother's petition for adoption.

# FACTS AND PROCEDURAL HISTORY

Daughters J.K.N.M. (born on September 18, 2003), Z.L.L.M. (born on November 15, 2004), and M.J.R.M. (born on January 29, 2007), were all born out of wedlock to Father and L.T. (Mother). Father's paternity was established at birth when Father signed paternity affidavits. In 2011, Father and Mother separated. Mother thereafter began a relationship with Adoptive Mother and the two resided together for a period of two years. On June 27, 2014, Mother married Adoptive Mother.

In August 2017, Father was sentenced to ten years for his conviction for Level 2 felony dealing in methamphetamine, and his projected release date is 2023 when the Children will be nineteen, eighteen, and sixteen years of age respectively.

On March 25, 2019, with Mother's consent, Adoptive Mother petitioned the trial court to adopt the Children. Father filed his objection on April 18, 2019, and on December 5, 2019, a hearing was conducted. Father testified that the last time he had any contact with his daughters was in 2015. At the close of the hearing, the trial court ordered a guardian *ad litem* report which was submitted on January 15, 2020.

In the report, Guardian *Ad Litem* Diane Haag (GAL Haag) stated that the Children reported that they loved and were close to Adoptive Mother and wanted to be adopted. Paternal Grandmother stated that she did not agree with Mother's and Adoptive Mother's sexuality, did not understand why the girls had to be adopted, and that the girls were well bonded with Father. Paternal Grandmother also claimed that the Children were being mentally and emotionally abused by Adoptive Mother. Paternal grandfather likewise stated that he did not agree with the adoption. He claimed that Adoptive Mother was a violent person, and he believed that the Children were being threatened or coerced by Adoptive Mother to say that they wanted to be adopted. Maternal Grandmother equally stated that she did not agree with the adoption or Mother's sexuality, and she believed that Adoptive Mother regularly beat the Children with a belt. Mother stated that Father had been in and out of prison

for most of his daughters' lives and that the girls did not want to visit Father when he was in jail. Mother also claimed that she prevented her daughters from being around their paternal grandparents due to them coming back with head lice and bed bugs and that she also did not want them to be around the drugs she believed Father was involved in when he was not in prison.

[8] As to the claims of abuse by Adoptive Mother, the Children confessed to GAL Haag that they had lied about the abuse only to make their grandparents happy. GAL Haag also determined that much of the opposition to the adoption from the grandparents and Father stemmed from their dislike for Mother's and Adoptive Mother's sexuality and their fear that they would lose the ability to see the Children. GAL Haag then noted that Father had not been involved in his daughters' lives. Ultimately, GAL Haag recommended the adoption.

[9] On January 19, 2020, the trial court entered separate Orders of adoption in favor of Adoptive Mother after finding that she was fit to raise the Children and that it was in the Children's best interest to be adopted. Father subsequently appealed arguing that the trial court abused its discretion in granting Adoptive Mother's petition for adoption. Upon review, we determined that the Orders of Adoption were defective because the trial court failed to make any findings that would support dispensing with Father's consent to the adoption. As such, we retained jurisdiction, remanded to the trial court for specific findings which would support dispensing with Father's consent to the adoption. On October 19, 2020, the trial court entered Amended Adoption Decrees with respect to the Children in which it found that Father has not financially supported the

Children for years, and he has not had physical contact with the Children in years. Thus, the trial court concluded that pursuant to Indiana Code section 31-19-9-8, Father's consent to the adoption was not required, and it was in the best interests of the Children to be adopted by Adoptive Mother.

[10] Father now appeals. Additional information will be provided as necessary.

# DISCUSSION AND DECISION

[11] Father contends that the trial court erred in granting Adoptive Mother's petition to adopt the Children. He argues that he did not give his consent to the adoptions and that they should be set aside.

[12] As a reviewing court, we will not disturb the trial court's decision in an adoption proceeding unless the evidence leads to but one conclusion and the trial court reached the opposite conclusion. *In re Infant Girl W.*, 845 N.E.2d 229, 238 (Ind. Ct. App. 2006), *trans. denied*. We will neither reweigh the evidence nor reassess the credibility of witnesses, and we will examine only the evidence most favorable to the trial court's decision. *Id*. On appeal, we will not reweigh the evidence, instead focusing on the evidence and inferences most favorable to the trial court's decision. *J.H. v. J.L. & C.L.*, 973 N.E.2d 1216, 1222 (Ind. Ct. App. 2012). We generally give considerable deference to a trial court's rulings in family law matters, "as we recognize that the trial judge is in the best position to judge the facts, determine witness credibility, get a feel for family dynamics, and get a sense of the parents and their relationship with their children." *Id*.

[13]     The granting of a petition for adoption is a multi-step process. Indiana Code section 31-19-11-1(a) lists the prerequisites to granting a petition, including that "the adoption requested is in the best interest of the child" and "proper consent, if consent is necessary, has been given." If the requirements listed in the statute are met, "the court shall grant the petition for adoption and enter an adoption decree." Ind. Code § 31-19-11-1(a).

[14]     Generally, the first step in the process is determining whether the biological parent's consent to the adoption is required. Indiana Code section 31-19-9-8 addresses when consent is not required and provides, in relevant part:

> (a) Consent to adoption, which may be required under Section 1 of this chapter, is not required from any of the following:
>
> * * *
>
> (2) A parent of a child in the custody of another person if for a period of at least one (1) year the parent:
>
> (A) fails without justifiable cause to communicate significantly with the child when able to do so; or
>
> (B) knowingly fails to provide for the care and support of the child when able to do so as required by law or judicial decree.
>
> * * *
>
> (11) A parent if:

> (A) a petitioner for adoption proves by clear and convincing evidence that the parent is unfit to be a parent; and
>
> (B) the best interests of the child sought to be adopted would be served if the court dispensed with the parent's consent.

[15] The statute further provides that, "[i]f a parent has made only token efforts to support or to communicate with the child the court may declare the child abandoned by the parent." I.C. § 31-19-9-8(b). The party seeking to adopt bears the burden of proving by clear and convincing evidence that the noncustodial parent's consent is not required. *Matter of Adoption of E.M.L.*, 103 N.E.3d 1110, 1116 (Ind. Ct. App. 2018), *trans. denied*. In the instant case, the Amended Adoption Decrees provide that the necessity of obtaining Father's consent to the adoptions was obviated on alternative grounds: his failure to communicate, and failure to financially support the Children.

[16] Father claims that from the GAL's report, the Children had significant contact with Paternal Grandmother, and were closely bonded. While that is admirable, Father misses the mark. As a parent, Father, and not Paternal Grandmother, was required to maintain communication with the Children. Adoptive Mother presented evidence that Mother and Father separated in 2011, and after that, Father was incarcerated for a majority of the years following the separation and is presently serving a Level 2 felony dealing in methamphetamine sentence at the Indiana Department of Correction (DOC). Adoptive Mother elicited testimony from Father that he never once tried to write directly to the Children or telephone them while in prison. Indeed, Father admitted that his last contact

with the Children was at a failed meeting in 2015.  Four years later, Adoptive Mother filed her petition to adopt the Children.

[17]    The trial court also determined that Father's consent was not necessary for Adoptive Mother's adoption of the Children because he failed to support the Children.  We initially note that there was no child support order in place.  However, we recognize that Indiana law imposes a duty upon a parent to support his children.  *Irvin v. Hood*, 712 N.E.2d 1012, 1015 (Ind. Ct. App. 1999).  This duty exists apart from any court order or statute.  *Id.*; *see also In Re Adoption of M.A.S.*, 815 N.E.2d 216, 220 (Ind. Ct. App. 2004).  Consequently, even though no court order to pay child support may exist, Father still had a duty to support his children.  To carry her burden, Adoptive Mother presented evidence indicating that Father had failed to financially, within the year preceding the adoption petition, to support the Children.  Specifically, Adoptive Mother extracted testimony from Father that it had been "some years ago" since he had provided any financial support to the Children.  (Transcript Vol. II, p. 22).  Based on the foregoing, we find that sufficient evidence supports the trial court's determination that Father's consent was not required based on his knowing failure to communicate and failure to financially support the Children despite his ability to do so.

[18]    Nevertheless, we are mindful that a petition for adoption is not automatically granted following a showing that a natural parent failed to communicate or provide support when able to do so.  Once the statutory requirements are met, the court may then look to the arrangement which will be in the best interests of

the child. *In re Adoption of N.W.*, 933 N.E.2d 909, 914 (Ind. Ct. App. 2010), adopted in *In re Adoption of N.W.*, 941 N.E.2d 1042 (Ind. 2011). The purpose of Indiana's adoption statutes is to protect and promote the welfare of children by providing them with stable family units. *In re Adoption of D.C.*, 928 N.E.2d 602, 607 (Ind. Ct. App. 2010). On occasion we have observed that the relationship between parent and child is a bundle of human rights of such fundamental importance that adoption statutes, being in derogation of the common law, should be strictly construed in favor of a worthy parent and the preservation of such relationship. *In re Adoption of K.S.P.*, 804 N.E.2d 1253, 1258 (Ind. Ct. App. 2004). However, in evaluating the parent-child relationship, the best interests of the child are paramount, and our main concern should lie with the effect of the adoption on the reality of the minor child's life. *Id.*

[19] Adoptive Mother presented evidence with regard to the impact of the adoption on the Children's lives and whether the severance of her ties with Father would be in the Children's best interest. Mother and Adoptive Mother married in June of 2014 and have cooperatively raised the Children. Adoptive Mother testified that she provided financial and emotional support for the Children. In stark contrast to Father, Adoptive Mother testified that she has met each of the Children's needs, including "socks, shoes, panties, you name it. Hair supplies to personal issue to groceries to everything. A roof over their head, food in their belly, and water, electricity and so forth." (Tr. Vol. II, p. 11). GAL Haag interviewed the Children, the paternal and maternal families, and Adoptive Mother. All three children expressed their wish to be adopted by Adoptive

Mother, with the oldest expressing that she "feels like [Adoptive Mother] is already her mother." (Appellant's App. Vol. II, p. 92). GAL Haag noted that Father had not been involved in his daughters' lives, and she opined that the adoption would be in the Children's best interests. Adoptive Mother also presented evidence that she was going to provide a safe and stable home for the Children. While Father testified that he wanted to remain a loving presence in the Children's lives, as noted, Father, who has failed to communicate with the Children since 2015 or offer financial support, is currently incarcerated and his projected release date is June 27, 2023, at which time the Children would be nineteen, eighteen, and sixteen years of age, respectively. Father's projected release date does not consider the fact that Father has unresolved dealing in methamphetamine charges which may result in additional time in prison which would further hamper Father's ability to care and support the Children.

[20] In sum, we conclude that Adoptive Mother met her burden by proving by clear and convincing evidence, that Father, without justifiable cause, failed to communicate significantly with Children when able to do so, or that he failed to provide support within the year that preceded the filing of the adoption petitions. Therefore, we hold that the trial court did not err when it dispensed with Father's consent to the adoption. Further, we conclude that Adoptive Mother presented evidence that the adoption is in the Children's best interests.

# CONCLUSION

Based on the foregoing, we hold that Father's consent was not necessary to grant Adoptive Mother's adoption petition, and we determine that the adoption by Adoptive Mother was in the Children's best interests.

Affirmed.

May, J. and Altice, J. concur