**FOR PUBLICATION**

ATTORNEY FOR APPELLANT:

**ZACHARY J. EICHEL**
Einterz & Einterz
Zionsville, Indiana

ATTORNEY FOR APPELLEE:

**GARY M. SELIG**
**JENNIFER A. BONESTEEL**
Indianapolis, Indiana

**FILED**
Aug 13 2012, 9:36 am
CLERK
of the supreme court,
court of appeals and
tax court

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL THALHEIMER, | ) | |
| | ) | |
| Appellant-Defendent, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1203-PL-167 |
| | ) | |
| RAMON and STACEY HALUM, | ) | |
| | ) | |
| Appellees-Plaintiffs. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Cynthia Ayers , Judge
Cause No. 49D04-0906-PL-28898

**August 13, 2012**

**OPINION - FOR PUBLICATION**

**ROBB, Chief Judge**

<u>Case Summary and Issues</u>

Ramon and Stacey Halum (collectively, the "Halums") entered into a contract with Michael Thalheimer for Thalheimer to remove carpet and tiles in the Halums's home and to install new tiles. After Thalheimer did so, a dispute arose among the parties regarding whether, when, and what Thalheimer would do about some portion of the work with which the Halums were dissatisfied. Following a bench trial, Thalheimer appeals the trial court findings and judgment in favor of the Halums. Thalheimer raises four issues, which we restate as: 1) whether the Halums's spoliation of evidence, if at all, required a finding in favor of Thalheimer; 2) whether the doctrine of economic loss precluded the Halums's negligence claim; 3) whether the warranty in the contract precluded the Halums's breach of contract claim; and 4) whether the evidence presented supports the trial court's findings regarding the quality of Thalheimer's work. The Halums contend Thalheimer's appeal was made in bad faith, and accordingly they request appellate attorney fees.

We affirm upon concluding that Thalheimer waived his claim that the Halums spoliated evidence; the economic loss doctrine did not preclude the Halums's negligence claim; the trial court did not abuse its discretion in finding that Thalheimer's conduct negated the warranty in the contract; and the trial court did not abuse its discretion in finding that Thalheimer's work was of poor quality. We deny the Halums's request for appellate attorney fees.

On June 8, 2008, the Halums entered into a written contract with Thalheimer for his compensation to remove carpet and tiles in the Halums's living room, entryway, and at least one hallway, and to install new tiles. Thalheimer completed the work in late June, the Halums conducted an initial review[2] of his work, and Thalheimer and the Halums made a verbal agreement for Thalheimer to return at some unspecified later date to fix about six of the tiles which were unsatisfactory to the Halums. The Halums also paid Thalheimer in full and provided Thalheimer with two $100 gift cards as well, which Thalheimer believed to be a bonus.

Over the next several months, Thalheimer and the Halums corresponded by email to negotiate when and how many tiles Thalheimer would adjust when he returned to the Halums's home because the Halums identified additional tiles with which they were dissatisfied. At some point, the Halums became frustrated with the negotiations, hired another contractor to redo the flooring, and retained an attorney.

A little over a year after the contract was signed, on June 16, 2009, the Halums filed suit against Thalheimer, alleging breach of contract, negligence, and violation of an implied warranty of habitability.

Following a bench trial, the trial court entered an order which states:

---

[1] We note that confidential information appears in the exhibits which are part of the appellate record. The applicable rules governing the filing of documents excluded from public access are Indiana Appellate Rule 9(G)(1)(f) and Trial Rule 5(G), the latter of which explains how such documents shall be filed.

[2] There appears to be some dispute as to the length of time in which the Halums conducted this initial review of Thalheimer's work. Because this is an issue of fact, we defer to the fact-finder's assessment.

[T]he Court . . . now finds as follows:

1. That the [Halums] are entitled to Judgment against [Thalheimer] on their Complaint in the amount of $14,262.38, which represents the amount [the Halums] paid in labor and materials to Jeremy Keenan to have their floor torn out and re-installed as a result of [Thalheimer]'s Breach of Contract and negligence in installing the original floor per the parties' contract.
***

Appellant's Appendix. at 3-4.

Thalheimer filed a motion to correct error, which the trial court denied in an order which states:

### FINDINGS OF FACT
***

4. [Thalheimer] alleged [in his motion to correct error] that the Court misapplied the law to the facts of this case and if certain corrections are made that the outcome would have been in favor of [Thalheimer].

5. The Court rejects [Thalheimer]'s arguments on the Motion to Correct Error and hereby denies the same.

### CONCLUSIONS OF LAW

1. The contract was performed by [Thalheimer] and he was paid in full by the [Halums]. The contract was also supposed to be performed in a "good and workmanlike manner".

2. The tile floor installation was done improperly, installed in an un-workmanlike manner, and was a poor quality job. The [Halums] attempted to have [Thalheimer] complete repair to the floor for several months, to no avail, and ended up having the entire floor replaced.

3. [Thalheimer] breached the contract, but was paid for his work, quantum meruit.

4. "Damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service to perform as expected." Gunkel v. Renovations, Inc., 822 N.E.2d 150, 153 (Ind. 2005). [The Halums] presented additional evidence of physical injury to their son due to scuffing his feet and falling down due to the unevenness of the tile floor installed by [Thalheimer] in order to support their claim of negligence. Gunkel is applicable to the facts of this case because the loss to [the Halums] was not purely economic. Tort law is therefore pertinent and should have been applied.

5. Expert testimony was presented by [the Halums]'s witness, Jeremy Keenan, that the tile floor installation was of poor quality and needed to be redone in its

4

entirety due to tile color and texture differences found in each new tile lot. He also found that he could not insure that the replacement of the offending tiles, by themselves, would not cause further damage to the floor during installation due to cracking and misalignment when placed next to the other non-offending tiles. Mr. Keenan was qualified as a skilled witness to establish the standard of care in installing this type of floor. That standard should have been met by [Thalheimer] in his initial installation and was not which supports the finding in favor of [the Halums].

6. Error alleged by [Thalheimer] that relates to spoliation of evidence and standing to sue were waived by [Thalheimer] and therefore not considered in this order.

***

Id. at 5-7.

Thalheimer now appeals.

## Discussion and Decision

### I. Standard of Review

In reviewing an order in which the trial court makes findings of fact and conclusions of law, our standard of review is well-settled:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

McCauley v. Harris, 928 N.E.2d 309, 313 (Ind. Ct. App. 2010), trans. denied.

5

## II. Spoliation of Evidence

Thalheimer first argues the Halums committed spoliation of evidence by having Keenan remove and redo Thalheimer's tile installation, all in the same month that the Halums filed suit. The Halums's spoliation of evidence, Thalheimer argues, required the trial court to find in his favor. Before we discuss whether spoliation occurred or its effect, if any, on the trial court's findings, we address the threshold issue of whether Thalheimer waived appellate review of this issue.

Waiver is a threshold issue because generally a party is precluded from presenting an argument or issue to Indiana appellate courts unless the party first raised that argument or issue to the trial court. GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC., 764 N.E.2d 647, 651 (Ind. Ct. App. 2002).

> This rule exists because trial courts have the authority to hear and weigh the evidence, to judge the credibility of witnesses, to apply the law to the facts found, and to decide questions raised by the parties. Appellate courts, on the other hand, have the authority to review questions of law and to judge the sufficiency of the evidence supporting a decision. The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. Conversely, an intermediate court of appeals, for the most part, is not the forum for the initial decisions in a case. Consequently, an argument or issue not presented to the trial court is generally waived for appellate review.

Id. (citations omitted); see, e.g., Harris v. Superior Ct. of Arizona ex rel. Cnty. of Maricopa, 278 Fed. Appx. 719, 722 (9th Cir. 2008) (holding that the appellant waived his appellate claim of spoliation of evidence by raising it for the first time on appeal).

Thalheimer insists he raised the issue of spoliation to the trial court, referring us to two portions of the record: 1) one page of the transcript in which Ramon Halum states that in

June 2009 Keenan redid Thalheimer's work of June 2008, and 2) portions of Thalheimer's motion to correct error in which he summarizes the law regarding spoliation of evidence and urges the trial court to make an inference in his favor. Thalheimer also appears to contend the Halums's spoliation of evidence was so obvious that he should not have needed to explicitly make such an argument to the trial court.

Arguments articulated in a motion to correct error which were not made at trial do not preserve issues for appellate review. If the opposite were true, motions to correct error might contain a bevy of untimely objections, petty complaints regarding the logistical presentation of evidence, attempts to rework trial strategies that did not work well, and other untimely arguments that would distract from the purpose of a motion to correct error.[3]

We are also not persuaded by Thalheimer's contention that some arguments are so obvious that they do not require explicit argument or presentation of <u>any</u> evidence. As stated, an argument must be raised before the trial court to preserve an issue for appeal. If an argument is as obvious as Thalheimer characterizes his own regarding spoliation, evidence or an argument will inevitably be presented at trial, even if unintentionally.

It is this latter type of argument which we now address. Specifically, whether the testimony to which Thalheimer now refers us sufficiently raised the issue of spoliation to avoid waiver:

---

[3] Cf. <u>P-M Gas & Wash Co., Inc. v. Smith</u>, 268 Ind. 297, 301, 375 N.E.2d 592, 594 (1978):

> The motion to correct error serves three purposes: (1) to present to the trial court an opportunity to correct error which occurs prior to the filing of the motion; (2) to develop those points which will be raised on appeal by counsel; and (3) to inform the opposing party concerning the points which will be raised on appeal so as to provide that party an opportunity to respond in the trial court and on appeal.

Q [Thalheimer's trial attorney]: So . . . so just to clarify. June, 2008 Mr. Thalheimer laid the floor and June, 2009 Mr. Keenan laid the floor. Is that right?
A [Ramon Hulman] Yes.

Transcript at 57 (ellipses in original).

This single question and answer is insufficient to argue spoliation occurred, and thus, insufficient to preserve the issue of spoliation for appellate review. This question was part of cross-examination which spanned less than one and one-half pages in the transcript. Read in context, this question appears to have been intended to clarify that Keenan redid Thalheimer's work during the two-year warranty period after Thalheimer completed the work. This question – and the focused, limited cross-examination in the entirety – did not explicitly seek to present evidence of spoliation, appear to have been intended to demonstrate evidence of spoliation, or raise the issue of spoliation at all.[4]

### III. Economic Loss

Generally, the economic loss doctrine provides that where a contract exists, that "contract is the only available remedy where the loss is solely economic in nature, as where the only claim of loss relates to the [service or] product's failure to live up to expectations, and in the absence of damage to other property or person." Gunkel, 822 N.E.2d at 152

---

[4] We note that even if Thalheimer did not waive the issue of spoliation of evidence, and even if the trial court should have concluded the Halums did, in fact, spoliate evidence, the trial court was not required to find in favor of Thalheimer. It is well-settled that when one party demonstrates that an opposing party spoliated evidence, the fact-finder has the discretion to find that the missing evidence was unfavorable to the party which destroyed the evidence, and likewise, the discretion to find that the missing evidence was not necessarily unfavorable to the party which destroyed the evidence. Glotzbach v. Froman, 854 N.E.2d 337, 338 (Ind. 2006) ("If spoliation by a party to a lawsuit is proved, rules of evidence permit the jury to infer that the missing evidence was unfavorable to that party.") (emphasis added); Am. Nat. Prop. & Cas. Co. v. Wilmoth, 893 N.E.2d 1068, 1070 (Ind. Ct. App. 2008) ("If spoliation by a party to a lawsuit is proved, the jury may infer

8

(quotation omitted). Thalheimer argues the trial court failed to apply the economic loss doctrine in determining the claims and remedies available to the Halums. The Halums respond that the economic loss doctrine does not apply because the trial court entered a factual finding that the Halums's young son sustained physical injury.

We are guided by Indiana case law regarding the economic loss doctrine, which began with <u>Reed v. Cent. Soya</u>, 621 N.E.2d 1069 (Ind. 1993), <u>modified on reh'g on other grounds by</u> 644 N.E.2d 84 (Ind. 1994). In <u>Reed</u>, the supreme court principally addressed whether, under Indiana's Strict Product Liability Act, one may recover damages for property damage. The court adopted the economic loss doctrine, which is common in other states, and held that "[w]here . . . <u>only</u> economic loss is alleged, no recovery is allowed under the Act." <u>Id.</u> at 1074 (emphasis in original). The court continued:

> [W]here the loss is solely economic in nature, as where the only claim of loss relates to the product's failure to live up to expectations, and in the absence of damage to other property or person, then such losses are more appropriately recovered by contract remedies.
> . . . Allowing a buyer to recover in tort where he has suffered only economic loss allows him to circumvent the seller's effective limitation or exclusion of warranties under the UCC, and subjects manufacturers to liability for damages of unknown and unlimited scope.

<u>Id.</u> at 1074-75.

In <u>Gunkel</u>, the court clarified:

> Indiana law under the Products Liability Act <u>and under general negligence law</u> is that damage from a defective product or service may be recoverable under a tort theory if the defect causes personal injury or damage to other property, but contract law governs damage to the product or service itself and purely

---

that the missing evidence was unfavorable to that party.") (emphasis added), <u>trans. denied</u>.

9

> economic loss arising from the failure of the product or service to perform as expected.
>
> \*\*\*
>
> The theory underlying the economic loss doctrine is that the failure of a product or service to live up to expectations is best relegated to contract law and to warranty either express or implied. The buyer and seller are able to allocate these risks and price the product or service accordingly.

822 N.E.2d at 153.

In other words, a plaintiff may bring an action for breach of contract and may only recover economic losses under that contract, but the same plaintiff may also bring a tort action for a loss that is not purely economic and not covered in the contract. Whether the plaintiff may succeed under the tort theory is another question, but the point here is that the plaintiff is not precluded from bringing an action for personal injuries merely because a contract existed and the plaintiff also seeks a remedy under the contract. See Fleetwood Enters., Inc. v. Progressive N. Ins. Co., 749 N.E.2d 492, 495 (Ind. 2001) ("[U]nder Indiana procedure, a plaintiff may readily pursue both a contract claim for damage to the product itself and a tort claim for personal injury or damage to other property under the Products Liability Act.").

Here the Halums sued Thalheimer for a breach of contract, and the trial court found in their favor. The Halums also sued Thalheimer for negligence for the injury to their son, and the trial court found in their favor. The economic loss doctrine does not lead us to conclude the trial court committed reversible error.

Thalheimer appears to challenge the trial court's finding that the Halums's son sustained an injury, but this is quite different from arguing the trial court improperly failed to

10

apply the economic loss doctrine, and is unpersuasive in its own right because we do not reweigh evidence.

## IV. Warranty

Thalheimer next argues that the trial court erred in not considering the warranty included in the contract when it ruled in favor of the Halums. The portion of the contract to which Thalheimer refers states: "All workmanship guaranteed for two (2) years from date of completion." Appellant's App. at 92. Thalheimer contends that because of this clause, the Halums are not entitled to reimbursement from Thalheimer for having another contractor redo the tiling work within two years after Thalheimer completed his work.

In addressing Thalheimer's argument as to the warranty, at least two sub-issues arise. It appears from the evidence that the Halums sought Thalheimer's additional work under the warranty and Thalheimer was dilatory in responding. The degree to which the Halums diligently sought redress under the warranty and the degree to which Thalheimer was dilatory were factual issues at trial. The first sub-issue then, is whether the trial court abused its discretion by apparently concluding that Thalheimer's dilatory response in effect voided the warranty.[5] As stated, this was an issue thoroughly covered by the testimonies of Thalheimer and the Halums and the email correspondence between them. This is a factual issue, and we defer to the fact-finding court that the communication between the parties beginning at the time Thalheimer first completed the work led to the finding that Thalheimer's conduct

---

[5] Stated differently, in a manner more common when addressing breach of contract claims, did Thalheimer breach the contract first by not honoring the warranty? This is essentially what the trial court addressed, but the issue was presented at trial in a manner that is better described in the text.

11

effectively voided the warranty. We do not second-guess the trial court's findings in this regard.

The second sub-issue is whether the warranty in the contract was clear. In Schultz v. Erie Ins. Grp., 754 N.E.2d 971 (Ind. Ct. App. 2001), trans. denied, our court explained how the term "faulty workmanship" in an insurance contract could be read in at least two ways. Id. at 974-77. The term workmanship could refer to a final product, or it could refer to one's craftsmanship. This ambiguity could be relevant here, where Thalheimer argues the warranty in the contract only entitled the Halums to his continued labor (i.e., craftsmanship) in the event of their dissatisfaction; while the Halums argue the warranty in the contract entitled them to a satisfactory product. Because of this genuine dispute over the interpretation of the terms of a contract, it would not have been unreasonable for the trial court to construe it against Thalheimer, who drafted it. See Binford v. Shicker, 553 N.E.2d 845, 848 (Ind. Ct. App. 1990), trans. denied.

In sum, the trial court did not abuse its discretion in finding for the Halums in spite of the disputed warranty included in the contract.

## V. Quality of Thalheimer's Work

Thalheimer next argues the trial court erred in concluding that Thalheimer's tile work was done in an unworkmanlike manner. He refers us to portions of the record which support his view that his work was done properly, but this is contrary to other portions of the record which support the trial court's finding that the quality of his work was of poor quality, namely, the testimonies of the Halums and Keenan. Thalheimer invites us to reweigh the

evidence and assess the credibility of witnesses. Per our standard of review, we decline this request and affirm this conclusion of the trial court.

## VI. Appellate Attorney Fees

The Halums argue Thalheimer's appeal is frivolous and was made in bad faith, and therefore they seek appellate attorney fees under Appellate Rule 66(E). Our discretion to award attorney fees under this rule is "limited to instances when an appeal is permeated with meritlessness, bad faith, frivolity, harassment, vexatiousness, or purpose of delay." Life v. F.C. Tucker Co., Inc., 948 N.E.2d 346, 353 n.3 (Ind. Ct. App. 2011). We do not believe Thalheimer's appeal warrants an award of appellate attorney fees to the Halums, and deny the request.

## Conclusion

Thalheimer waived the issue of the Halums's spoliation of evidence by not presenting the issue to the trial court. The economic loss doctrine did not preclude the Halums's negligence claim. The trial court did not abuse its discretion in determining the contract warranty did not bar the Halums's breach of contract claim, or in finding that Thalheimer's work was of poor quality. Therefore we affirm, but the Halums's request for attorney fees is denied.

Affirmed.

BAILEY, J., and MATHIAS, J., concur.