Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Jul 17 2013, 5:51 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**DOUGLAS R. DEMURE**
Aurora, Indiana

ATTORNEYS FOR APPELLEE:

**JOSEPH D. HERBERGER**
Castor & Hershberger, P.C.
Madison, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MICHAEL STRATTON, PERSONAL REPRESENTATIVE OF THE ESTATE OF IDA C. GROW, DECEASED, | ) ) ) ) | |
| Appellant-Plaintiff, | ) ) | |
| vs. | ) | No. 69A01-1212-CT-543 |
| MARJORIE ANN MILLER, | ) ) ) | |
| Appellee-Defendant. | ) | |

APPEAL FROM THE RIPLEY CIRCUIT COURT
The Honorable Carl H. Taul, Judge
Cause No. 69C01-1111-CT-18

**July 17, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**BARNES, Judge**

**Case Summary**

Michael Stratton, the personal representative of the Estate of Ida Grow ("the Estate"), appeals the trial court's award of damages following a bench trial. We affirm in part, reverse in part, and remand.

**Issue**

The Estate raises one issue, which we restate as whether the trial court's award of damages was inadequate.

**Facts**

Ida and her husband, Arval Grow, purchased property in what is now the Town of Napoleon in 1948. In 1956, the eastern border of their property abutted property owned by James and Francis Venable. That year, Arval erected a four foot high woven wire fence along the property line separating the two properties. Both the Grows and the Venables used their property for agricultural purposes and, for more than forty years, the Grows and Venables accepted the location of the fence as their common property line. In 2002, the Venable property was sold to sisters, Mary Kohlman and Marjorie Ann Miller. In 2003, Miller hired Jeffrey French to prepare a retracement survey of their property. The survey noted that portions of the fence were located as much as one foot over onto Miller's property. Arval died in 2004. In 2009, Kohlman conveyed her interest in the property to Miller.

The relationship between Miller and Ida became acrimonious. At one point, Ida cut off limbs from a spruce tree and other trees near the fence. On August 19, 2011, Miller, under the impression that the fence was on her property, tore down the fence.

On November 4, 2011, Ida filed a complaint for trespass and sought a permanent injunction. In the complaint, Ida requested compensatory damages, punitive damages, attorney fees, and costs. Miller answered the complaint and counterclaimed alleging trespass and seeking punitive damages and a permanent injunction. Miller also requested attorney fees and costs. On September 27, 2012, after a bench trial, the trial court issued an order finding in part:

> 16. On the 19th day of August, 2011, the defendant intentionally tore down, destroyed and removed approximately 215 feet of the plaintiff's fence.
>
> 17. The property line was established by the fence erected in 1956 by the acquiescence of landowners, Grow and Venable, over a period of (40) years.
>
> 18. Defendant/Counter Claimant is responsible for the destruction of 212 feet of fence which resulted in damages in the amount of Five Hundred Eighty Dollars ($580.00) and committed trespass in doing so.
>
> 19. Plaintiff cut off limbs from a spruce tree on her land next to the fence as well as other trees, but committed trespass in doing so.
>
> 20. For each parties' trespass, the Court assesses damages in the amount of One Dollar ($1.00) against Defendant in favor of Plaintiff and One Dollar ($1.00) against Plaintiff in favor of Defendant.
>
> 21. Other damages claimed by both parties rely on insufficient evidence or are too speculative for the Court to consider.
>
> 22. The true common property line separating the plaintiff's land from the defendant's land was established in 1956 and remained so by acquiescence on the part of the plaintiff and her husband and the defendant's predecessors in title, extending over a period of forty (40) years, as

3

established by a woven wire fence erected by Arval F. Grow in 1956.

23. The 2003 French retracement survey was a retracement survey and not a legal survey in accordance with I.C. 36-2-12-10 for purposes of establishing a new legal property line.

24. The Grow fence was erected in 1956 before the Grow lands and the then adjoining Venable lands were incorporated into the Town of Napoleon and were used and have continuously been used for agriculture, farming, animal raising, and/or grazing purposes and, therefore, the fence in question was and has remained a legal partition fence.

25. The defendant intentionally tore down, destroyed and removed the plaintiff's fence without legal authority or justification.

26. As a result of the defendant's conduct, the plaintiff is entitled to compensatory damages against the defendant in the sum of Five Hundred Eighty One Dollars ($581.00).

27. As a result of Plaintiff's conduct, Defendant is entitled to recover compensatory damages in the sum of One Dollar ($1.00).

28. The Court grants judgment in favor of Plaintiff and against Defendant in the sum of Five Hundred Eighty One Dollars ($581.00) and against Plaintiff and in favor of Defendant in the sum of One Dollar ($1.00), denies the Defendant's counterclaim and both parties' claims for attorney's fees.

29. The Court finds no threat of any irreparable injury justifying the issuance of an injunction.

Appellant's App. pp. 9-11.

On October 25, 2012, Ida filed a motion to correct error challenging the trial court's finding that she committed trespass and arguing that she should have been

4

awarded additional compensatory damages, costs, attorney fees, and punitive damages. The trial court did not rule on the motion and, on December 10, 2012, Ida filed a notice of appeal. On February 15, 2013, Ida died, and Michael Stratton, the personal representative of the Estate, was substituted as the Appellant.

**Analysis**

It appears that the trial court entered its findings and conclusions sua sponte. Under these circumstances, special findings entered by the trial court sua sponte control only as to the issues they cover. Harrison v. Thomas, 761 N.E.2d 816, 819 (Ind. 2002). "As to issues on which the trial court has not made findings, or on which the findings are inadequate, we treat the judgment as a general one and we examine the record and affirm the judgment if it can be sustained upon any legal theory the evidence supports." Id. As to the findings the trial court did make, we first must determine whether the evidence supports the findings and then whether those findings support the trial court's conclusions. Yanoff v. Muncy, 688 N.E.2d 1259, 1262 (Ind. 1997). Findings will only be set aside if they are clearly erroneous, which occurs only when the record contains no facts to support them either directly or by inference or if the trial court applies the wrong legal standard to properly found facts. Id. "In order to determine that a finding or conclusion is clearly erroneous, an appellate court's review of the evidence must leave it with the firm conviction that a mistake has been made." Id.

The Estate argues that the trial court's award of damages was insufficient. "The computation of damages is a matter within the discretion of the trial court, and mathematical certainty is not required." Ponziano Const. Servs. Inc. v. Quadri

5

Enterprises, LLC, 980 N.E.2d 867, 873 (Ind. Ct. App. 2012). "However, the amount awarded must be supported by evidence in the record, and may not be based on mere conjecture, speculation, or guesswork." Id. When the specific issue on review relates to a question of inadequate damages, we will not reverse a damage award if it is within the scope of the evidence before the trial court, and we will not reweigh the evidence or judge the credibility of the witnesses. Id.

## I. Costs

The Estate argues that the trial court should have awarded Ida costs because she was "the prevailing party of the dominant issue in this case[.]"[1] Appellant's Br. p. 11. In support of its argument, the Estate relies on Indiana Code Section 33-37-3-4, which provides, "A party for whom judgment is entered in a civil action is entitled to recover costs." It also cites Indiana Code Section 34-52-1-1(a), the General Recovery Statute, which provides "In all civil actions, the party recovering judgment shall recover costs, except in those cases in which a different provision is made by law." Indiana Trial Rule 54(D) also addresses costs and provides in part, "Except when express provision therefor is made either in a statute or in these rules, costs shall be allowed as of course to the prevailing party unless the court otherwise directs in accordance with any provision of law . . . ."

---

[1] Contrary to Ida's assertion that Finding 28 references the denial of Miller's counterclaim, we believe the trial court was referring to Miller's counterclaim for punitive damages. Reading the trial court's order as a whole, it is clear that Miller prevailed on her trespass claim against Ida, and we reject the Estate's assertion that the trial court plainly denied Miller's counterclaim for trespass.

6

Miller asserts that an award of costs is not clearly authorized by statute here because the trial court ruled for both Miller and Ida on their respective trespass claims and entered judgment for Miller in the amount of $1.00 on her claim. She argues that here, where both parties prevailed in some fashion, an award of costs should be discretionary as it is for appellate costs. See Ind. Appellate Rule 67(C) (explaining in part that, when a judgment or order is affirmed in whole or reversed in whole, the prevailing party is entitled to recover costs and in "other cases, the recovery of costs shall be decided in the Court's discretion.").

Although both parties prevailed on their trespass claims, the trial court awarded Miller $1.00 in damages and Ida $581.00. Under these circumstances, because the trial court awarded Ida a net judgment of $580.00, we believe she is the prevailing party. Thus, she was entitled to recover costs.

Nevertheless, the Estate has not established that an award of costs necessarily includes all of the fees for which it seeks reimbursement. Specifically, the Estate seeks reimbursement for the trial court filing fee, the fee for the court reporter who prepared Miller's deposition, the surveyor's fee to testify at trial, and the costs of transcribing testimony to prepare proposed findings and conclusions.[2] The Estate, however, provides no authority for the notion that all of these fees are considered "costs."

Instead, "'[t]he term 'costs' is an accepted legal term of art that has been strictly interpreted to include only filing fees and statutory witness fees.'" Van Winkle v. Nash,

---

[2] Although the Estate also references various appellate costs it its brief, the procedure for recovering appellate costs is provided in Indiana Appellate Rule 67.

7

761 N.E.2d 856, 861 (Ind. Ct. App. 2002) (quoting Midland–Guardian Co. v. United

Consumers Club Inc., 499 N.E.2d 792, 800 (Ind. Ct. App. 1986)). In the absence of

manifest contrary legislative intent, the term "costs" must be given its accepted meaning

and does not include litigation expenses. Id. We have held that the General Recovery

Statute limits the costs recoverable to filing fees and witness fees. Id. at 862. Thus, of

the various expenses the Estate references, only the filing fee and the statutory witness

fee described in Indiana Code Section 33-37-10-3 are within the accepted meaning of the

"costs" that the Estate may recover.

## II. Compensatory Damages

The Estate asserts that the trial court's award of compensatory damages was

inadequate and should have included labor costs for the installation of the new fence and

veterinary bills for injuries to Ida's horse after the fence was removed. As an initial

matter, however, the Estate does not cite any authority explaining the nature and extent of

damages recoverable in a tort action. To the extent the Estate is arguing that the trial

court's award was improper as a matter of law, this issue is waived. See Dickes v.

Felger, 981 N.E.2d 559, 562 (Ind. Ct. App. 2012) ("A party waives an issue where the

party fails to develop a cogent argument or provide adequate citation to authority and

portions of the record."); Ind. Appellate Rule 46(A)(8)(a).

To the extent the Estate is challenging the trial court's finding that the other

damages claimed by the parties were based on insufficient evidence or too speculative,

we are not convinced that the finding is clearly erroneous. Regarding the labor costs for

the installation of the new fence, although there was evidence that there would be labor

8

costs in addition to the $580 in materials to replace the fence, the Estate acknowledges that "no evidence was introduced pertaining to labor costs for the installation of a new fence[.]" Appellant's Br. p. 13. In the absence of any evidence regarding actual labor costs, an award of labor costs would have been speculative.

As for the $702.79 for veterinarian bills for Ida's horse, the Estate argues that, after Miller removed the fence, Ida had to confine her horse to a hot barn in August and that she eventually installed an electric fence so her horse could graze in another part of the property. According to Ida, when the horse first hit the electric fence, it reared back and hurt its leg, requiring veterinary treatment.

Miller, however, testified that two months before she removed the fence she sent Ida a letter[3] advising her that, according to the survey, the fence was on Miller's property and that she was going to tear it down. Miller informed Ida that she had sixty days to contain the horse. Miller also testified that Ida had a pasture and corral in the back where

_____

[3] According to the transcript, numerous exhibits, including letters, the survey, and pictures of the property, the fence, the pasture, and the parties' conduct were admitted into evidence. The volume of exhibits prepared by the court reporter, however, includes only two exhibits, the veterinarian's bill and an itemized statement of Ida's attorney fees. The Exhibit Index includes the notation, "request of plaintiff's counsel only 2 exhibits included." In her notice of appeal, Ida stated, "no request is being made for all exhibits to be included in Court Reporter's transcript." Indiana Appellate Rule 9(F)(5), which requires an appellant to request a transcript of <u>all</u> the evidence when arguing that a finding of fact or conclusion thereon is unsupported by the evidence or is contrary to the evidence, is disserved by the inclusion of only select exhibits on appeal, and we strongly discourage such practice.

"The burden is on appellant to establish a complete and accurate record." <u>Willett v. Review Bd. of Indiana Dep't of Employment & Training Servs.</u>, 632 N.E.2d 736, 740 (Ind. Ct. App. 1994). Further, "[i]t is a cardinal rule of appellate review that the appellant bears the burden of showing reversible error by the record, as all presumptions are in favor of the trial court's judgment." <u>Marion-Adams Sch. Corp. v. Boone</u>, 840 N.E.2d 462, 468-69 (Ind. Ct. App. 2006). Although the trial court's finding that Miller intentionally removed the fence is not disputed, a complete review of the record is necessary to determine whether the evidence supports the trial court's award of damages. However, because Miller included copies of many of the exhibits in her appendix, which even the Estate relied on in its reply brief, we are able to adequately review the issues raised by the Estate.

"she would rotate graze anyway." Tr. p. 136. She testified that Ida always fed and watered the horse behind the barn and would "on occasion" have the horse in the front pasture by the fence. Id. Miller testified that Ida had set up a corral prior to Miller tearing the fence down and that she would not have torn down the fence unless the horse was contained. In light of the photographic evidence of the property and the conflicting testimony, it was within the trial court's discretion to reject Ida's claim that the horse's injuries were attributable to Miller's removal of the fence.

### III. Mental Anguish

The Estate argues that Ida was entitled to recover damages because the removal of the fence caused her anxiety, worry, sleepless nights and mental anguish.

> Indiana courts recognize . . . award compensatory damages in certain tort actions where mental anguish is unaccompanied by physical injury. When a tort involves the invasion of a legal right which by its very nature is likely to provoke an emotional disturbance or when the conduct causing the injury was inspired by fraud, malice, or like motives and the conduct was intentional, such emotional or mental anguish supports an award of compensatory damages.

Arlington State Bank v. Colvin, 545 N.E.2d 572, 576-77 (Ind. Ct. App. 1989) (citation omitted).

Although there is evidence that Ida was very upset about the removal of the fence, there is also evidence that the more-than-fifty-year-old wire fence was in such disrepair that Ida's horse repeatedly broke through it, that the horse ate Miller's vegetation on the other side of the fence, and that in the years prior to the removal of the fence Ida had repeatedly threatened Miller. There was also evidence that Miller was acting on the

10

belief, albeit incorrect, that the survey represented the true property lines. Based on the totality of the evidence, it was within the trial court's discretion to determine that Miller's intentional removal of the fence was not by its very nature likely to provoke an emotional disturbance or inspired by fraud, malice, or like motives. To the extent the Estate argues otherwise, it is asking us to reweigh the evidence, which we cannot do.

### IV. Punitive Damages

The Estate argues that "[a]ggravating circumstances, such as intentional and oppressive conduct, are proper grounds for awarding punitive damages" and that, based on Miller's conduct, the evidence "overwhelmingly supports an award of punitive damages . . . ." Appellant's Br. p. 15. The Estate asserts that an award of punitive damages is within the trial court's discretion and cites Indiana Code Section 34-51-3-4 for the proposition that punitive damages may not be more than the greater of three times the amount of compensatory damages or $50,000. Other than this statute, the Estate cites no authority discussing the propriety of an award of punitive damages. The failure to support this argument with citation to authority results in the waiver of the argument. See Dickes, 981 N.E.2d at 562; App. R. 46(A)(8)(a).

Waiver notwithstanding, Miller testified that she tore down the fence because she believed she was the rightful owner of the property based on the survey and the advice of the sheriff and the township trustee regarding the legal significance of the survey. There was also evidence Miller advised Ida of her intention to remove the fence by letter sixty days before she actually removed it and that the relationship between the parties was mutually acrimonious. The conflicting evidence was weighed by the trial court, and it

11

was within the trial court's discretion to find that the evidence was insufficient to support Ida's request for punitive damages.

### V.  Attorney Fees

The Estate also suggests that the trial court should have awarded Ida punitive damages, costs, and attorney fees pursuant to Indiana Code Section 34-24-3-1, the Crime Victim's Compensation Act ("CVCA"), which allows the recovery of treble damages, costs, reasonable attorney fees, and other expenses for someone who suffers a pecuniary loss as a result of the violation of certain criminal statutes.  At issue here is criminal trespass as defined by Indiana Code Section 35-43-2-2.  As Miller points out, however, Ida did not timely raise this statute as a basis for recovery of additional damages or attorney fees.

Generally a party is precluded from presenting an argument or issue to Indiana appellate courts unless it first raised that argument or issue to the trial court.  Thalheimer v. Halum, 973 N.E.2d 1145, 1150 (Ind. Ct. App. 2012).

> "This rule exists because trial courts have the authority to hear and weigh the evidence, to judge the credibility of witnesses, to apply the law to the facts found, and to decide questions raised by the parties.  Appellate courts, on the other hand, have the authority to review questions of law and to judge the sufficiency of the evidence supporting a decision. The rule of waiver in part protects the integrity of the trial court; it cannot be found to have erred as to an issue or argument that it never had an opportunity to consider. Conversely, an intermediate court of appeals, for the most part, is not the forum for the initial decisions in a case. Consequently, an argument or issue not presented to the trial court is generally waived for appellate review."

Id. (quoting GKC Indiana Theatres, Inc. v. Elk Retail Investors, LLC., 764 N.E.2d 647, 651 (Ind. Ct. App. 2002) (citations omitted)).

The Estate argues that Ida raised this issue in her complaint because she alleged that Miller acted with malice, wanton, willful and/or oppressive conduct when she trespassed on Ida's property, that Miller's intentional and inexcusable malicious conduct resulted in trespass on Ida's land, and that punitive damages should be awarded to punish Miller and deter others, and because she requested attorney fees. Although Ida alleged intentional wrongdoing by Miller and sought punitive damages and attorney fees, Ida's complaint does not reference the CVCA or criminal trespass as a statutory basis for recovering treble damages and attorney fees, nor were these specific statutory provisions litigated at trial.

Further, the fact that Ida specifically raised the CVCA as a basis for recovering attorney fees and costs in her motion to correct error is insufficient to preserve the issue for appellate review. See Thalheimer, 973 N.E.2d at 1150 ("Arguments articulated in a motion to correct error which were not made at trial do not preserve issues for appellate review."). Otherwise, "motions to correct error might contain a bevy of untimely objections, petty complaints regarding the logistical presentation of evidence, attempts to rework trial strategies that did not work well, and other untimely arguments that would distract from the purpose of a motion to correct error." Id. Because this issue was not timely raised, it is waived.

Finally, the Estate argues that attorney fees may be awarded when obdurate or bad faith behavior is shown. See Saint Joseph's Coll. v. Morrison, Inc., 158 Ind. App. 272,

279, 302 N.E.2d 865, 870 (1973) (explaining there are certain limited exceptions which exist to the general rule denying the awarding of attorney's fees, including for obdurate behavior). According to the Estate, the trial court's finding that Miller intentionally tore down the fence without legal authority or justification clearly demonstrates her behavior was obdurate and oppressive. We disagree that this finding required the trial court to award Ida attorney fees. As Morrison went on to explain, "the conduct must be vexatious and oppressive in the extreme before the court can impose special equitable sanctions." Id. at 280, 302 N.E.2d at 871. Although the trial court found that Miller intentionally tore down the fence, it also rejected both parties' requests for attorney fees, leading us to conclude that the trial court did not find Miller's conduct to be vexatious and oppressive in the extreme. Miller has not established that the trial court's refusal to award her attorney fees was clearly erroneous.

**Conclusion**

Although the Estate has not established that Ida was entitled to recover litigation expenses, additional compensatory damages, damages for mental anguish, punitive damages, or attorney fees, we remand for the trial court award the Estate costs, which include the filing fee and statutory witness fee. We affirm in part, reverse in part, and remand.

Affirmed in part, reversed in part, and remanded.

NAJAM, J., and BAILEY, J., concur.