**Pursuant to Ind.Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED
Sep 19 2013, 5:42 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**GARY W. SORGE**
**DANIELLE M. SIMMONS**
Sorge Law Firm, LLC
Lawrenceburg, Indiana

ATTORNEYS FOR APPELLEE:

**MICHAEL L. ROGERS**
North Vernon, Indiana

**LARRY J. GREATHOUSE**
North Vernon, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| IN RE THE ADOPTION OF K.T.: ) | |
| ) | |
| J.T. ) | |
| ) | |
| Appellant-Respondent, ) | |
| ) | |
| vs. ) | No. 69A01-1304-AD-184 |
| ) | |
| A.A.B., ) | |
| ) | |
| Appellee-Petitioner. ) | |

APPEAL FROM THE RIPLEY CIRCUIT COURT
The Honorable Carl H. Taul, Judge
Cause No. 69C01-1301-AD-001
Cause No. 69C01-1203-JP-13

**September 19, 2013**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

J.T. (Father) appeals from the trial court's order granting the adoption petition of A.A.B. (Adoptive Father) and terminating Father's parental rights as to K.T. Father presents several issues for our review, which we consolidate and restate as: was the trial court's decision to grant Adoptive Father's adoption petition without Father's consent, effectively denying Father's petition to establish support and visitation, and the consequent involuntary termination of Father's parental rights clearly erroneous?

We affirm.

K.T. was born out of wedlock on August 1, 2004 to A.C. (Mother) and Father, who were students in high school at the time. A paternity affidavit executed by Mother and Father at K.T.'s birth established Father's paternity of K.T. Although there is conflicting testimony about whether Mother, Father, and K.T. lived together after K.T.'s birth, both parties agree that they did not live together after 2006, when Mother and Father's relationship ended.

After breaking up with Mother, Father began a relationship with R.H. The two have remained in a relationship for approximately six and one-half years and have a child together. Mother began a relationship with A.C. after the end of her relationship with Father. Mother and A.C. were married and had a child during the course of that marriage. Mother and A.C. split up in May of 2009, and their marriage was dissolved at the end of that same year.

Although Father claims that he voluntarily paid some support to Mother, the evidence most favorable to the trial court's judgment reflects that Father had no receipts of any payments he claimed to have made by money order, and did not attempt to obtain receipts for those payments. On March 27, 2012, Father, *pro se*, filed a petition to establish paternity,

2

pay child support, and establish visitation rights as to K.T. Although employed, Father failed to pay support after filing his petition, and the evidence reflects that he failed to do so from 2008 through March of 2013, a period of sixty months. Within that time frame Father was incarcerated for approximately twenty-five and one-half months for his class A felony conviction, and was on probation at the time of the final hearing. Father was employed but did not make support payments during the other thirty-five and one-half months.

From March 2008 through March of 2013 Father did not communicate significantly with K.T. Father has never attempted to talk with K.T. by telephone, and the two letters he sent to her from prison were returned. Moreover, Father has not visited with K.T. since she was three years old, and K.T. would not likely recognize Father. Father made no effort to enforce visitation with K.T. prior to March 27, 2012, when he filed his petition to establish a visitation schedule.

Mother, who was on house arrest for her class D felony conviction at the time of the final hearing, began living with Adoptive Father in April 2010, and has a child by that relationship. Adoptive Father has been a father figure in K.T.'s life for three years, has attended all of K.T.'s school functions, parent-teacher conferences, and all but one of her athletic events. Adoptive Father claims an attachment to K.T. such that he would care for her as long as he is alive. A.C., whose child with Mother is in Mother's custody, acknowledged that Mother, Adoptive Father, and the children act as a family unit and would want Adoptive Father to take custody of the daughter he fathered with Mother in the event anything should happen to him.

3

Adoptive Father filed his petition to adopt K.T. on January 14, 2013. After Father received a summons pertaining to Adoptive Father's petition, Father filed an objection and motion to dismiss with the trial court. The matters were consolidated for purposes of a hearing on both Father's paternity petition and Adoptive Father's adoption petition, along with related motions pertaining to the petitions. The trial court issued an order denying Father's motion to dismiss the petition for adoption and granting Adoptive Father's adoption petition, consequently involuntarily terminating Father's parental rights to K.T. in that same order.

Father filed a motion to supplement the record and in the alternative to set a hearing on purported newly discovered evidence. The trial court denied the motion, concluding that the evidence could have been discovered prior to the adoption hearing. On April 15, 2013 an order closing the custody case was issued as a result of the order granting Adoptive Father's adoption petition. Father now appeals.

Father argues that the trial court's order granting Adoptive Father's petition to adopt K.T., denying Father's motion to dismiss the petition, and consequent involuntary termination of his parental rights to K.T. is clearly erroneous and should be set aside. When a trial court grants an adoption petition our standard of review compels us to consider the evidence most favorable to the petitioner and any reasonable inferences that can be drawn therefrom in order to determine whether sufficient evidence exists to sustain the trial court's decision. *Irvin v. Hood*, 712 N.E.2d 1012 (Ind. Ct. App. 1999). Consistent with this standard of review, we will not disturb the trial court's decision unless the evidence at trial

led to but one conclusion and the trial court reached an opposite conclusion. *Id*. We will not reweigh the evidence, but will examine the evidence most favorable to the trial court's decision. *Id*. The trial court's decision in these matters is presumed to be correct, and it is the appellant's burden on appeal to overcome that presumption. *In re Adoption of M.B.*, 944 N.E.2d 73 (Ind. Ct. App. 2011).

Where the trial court enters findings of fact and conclusions of law pursuant to Indiana Trial Rule 52(A), we use a two-tiered standard of review to determine whether the evidence supports the findings and whether the findings support the judgment. *In re Adoption of S.W.*, 979 N.E.2d 633 (Ind. Ct. App. 2012). Findings of fact are clearly erroneous if there is no evidence in the record or reasonable inferences therefrom to support them. *Id*. A judgment is clearly erroneous when it finds no support in the findings of fact and in the conclusions relying on those findings of fact. *Id.*

In the present case, Adoptive Father and Mother contend that Father's consent to K.T.'s adoption was not required. As such, Adoptive Father bore the burden of proving by clear and convincing evidence that Father's consent was not required. *In re Adoption of M.L.*, 973 N.E.2d 1216 (Ind. Ct. App. 2012). Ind. Code Ann. § 31-19-9-8 (West, Westlaw current with all 2013 legislation) provides the scenarios under which consent to the adoption is not required. Regardless of which of these scenarios serves as the basis for the decision to grant the adoption petition, an adoption is granted only if it is in the best interests of the child. Ind. Code Ann. § 31-19-11-1(a) (West, Westlaw current with all 2013 legislation); *In re Adoption of M.L.*, 973 N.E.2d 1216.

5

Adoptive Father alleged various grounds in support of his argument that Father's consent was not required. The trial court granted the petition on the basis that Father had failed to provide support when required to do so for a period of one year. I.C. § 31-19-9-3(a)(2) (West, Westlaw current with all 2013 legislation) is written in the disjunctive and provides that the consent of a parent of a child in another person's custody for a period of at least one year is not required for purposes of adoption where the parent has either failed to communicate significantly with the child when able to do so, or knowingly failed to provide care and support for the child when able to do so "as required by law or judicial decree." *See In re Adoption of T.W.*, 859 N.E.2d 1215, 1218 (Ind. Ct. App. 2006) ("[t]he provisions of Indiana Code Section 31-19-9-8 are disjunctive; as such, either provides independent grounds for dispensing with parental consent").

Father contends that the trial court erred by relying on this ground in reaching the determination that his consent to the adoption was not required. He argues that his attempts to establish some sort of child support payments via his petition to establish paternity, visitation, and child support were thwarted due to the number of continuances filed by Mother in that case.

While acknowledging a parent's fundamental right to raise a child without undue interference by the state, and the right to have unrestrained custody of his or her child, we recognize that those rights are to be balanced against a parental duty to provide for the physical and mental well-being of the child. *Wardship of Nahrwold v. Dep't of Pub. Welfare of Allen Cnty*, 427 N.E.2d 474 (Ind. Ct. App. 1981). Looking at the evidence before the trial

6

court, Father's paternity was established by paternity affidavit when K.T. was born. We have held that Indiana law imposes a duty upon a parent to support his children and that duty exists separate from any court order or statutory requirement. *Irvin v. Hood*, 712 N.E.2d 1012 (Ind. Ct. App. 1999).

Father claimed that he had made child support payments early on, which was refuted by Mother's testimony, and Father had no receipts or evidence supporting that contention. The trial court acknowledged that Father was incarcerated for a period of time, which is a relevant inquiry into Father's ability to pay support. *See Matter of Snyder*, 418 N.E.2d 1171, 1182 (Ind. Ct. App. 1981) ("she was unable to support her children because she was either incarcerated or unemployed"). But even giving Father the benefit of doubt regarding that period of time, the record reflects that Father failed to pay child support for a period in the aggregate of thirty-four and one-half months.

The plain language of the statute provides that the relevant time period under consideration for purposes of failure to pay support is any one-year period in which the parent was required to pay support and had the ability to pay support, but failed to do so. I.C. § 31-19-19-9-8. The legislature has specifically set forth instances where the time period under consideration must immediately precede the filing of the adoption petition. *See, e.g.,* Ind. Code Ann. § 31-19-9-8(a)(1) ("[c]onsent to adoption . . . is not required from . . . a parent . . . if the child is adjudged to have been abandoned or deserted for at least six (6) months immediately preceding the date of the filing of the petition for adoption"). Such a limitation does not appear in the statutory provision pertaining to the payment of child support.

7

Father testified that, excluding his period of incarceration, he worked for some time at a job earning approximately $8.00 per hour. He claimed to have lived with Mother and K.T. when K.T. was three to six months old, and that he contributed toward the rent, but could provide no evidence to support that contention beyond his own testimony. Father testified that he began working at Pri-Pak distributing energy drinks and alcoholic beverages, which was a better job. Father claimed that his starting pay was $11.29 per hour and at the end of his employment had reached a pay level of $13.88 per hour. Father held that position for three years, during which time he split up with Mother and began a relationship with R.H., a relationship which resulted in the birth of a child. Father has lived with R.H. for six and one-half years.

One can reasonably infer from the evidence that Father was able to pay child support for K.T.'s benefit, but did not do so. In assessing under the totality of the circumstances whether there was income earned, if it was steady or sporadic, and Father's reasonable and necessary expenses, we find evidence to support the trial court's conclusion that Father had the ability to pay and did not do so. *See In re Adoption of K.F.*, 935 N.E.2d 282, 288 (Ind. Ct. App. 2010)("[a] petitioner for adoption must show that the non-custodial parent had the ability to make the payments which he failed to make. That ability cannot be adequately shown by proof of income standing alone. To determine that ability, it is necessary to consider the totality of the circumstances"). Consistent with our standard of review, we find that the trial court gave serious consideration to the evidence before it and its determination was not clearly erroneous.

Having found that Father's consent to Adoptive Father's adoption of K.T. was not required, we turn to the issue whether Adoptive Father fulfilled his burden of establishing that his adoption of K.T. was in K.T.'s best interest. The objective of Indiana's adoption statutes is to protect and promote the welfare of children through the provision of stable family units. *In re Adoption of D.C.*, 928 N.E.2d 602 (Ind. Ct. App. 2010). It is axiomatic that the best interests of the children are paramount in adoption proceedings. *Id*.

Although Father contends that there was no hearing to determine whether adoption was in K.T.'s best interest, the record reflects that all of the pending motions and petitions pertaining to K.T. were considered by the trial court at the hearing held on March 26, 2013. The trial court was presented with evidence that Adoptive Father has acted as K.T.'s father figure since the 2009 holiday season, or for approximately twenty-seven months. Adoptive Father has also assumed and provided all of the support for K.T. Adoptive Father, Mother, K.T., and K.T.'s half-siblings act as a family unit. Adoptive Father has attended all of K.T.'s parent-teacher conferences and has missed only one of K.T.'s sporting activities. K.T. does not recognize Father and considers Adoptive Father to be her father.

In addition to the testimony presented at the hearing, the trial court, with the agreement of the parties, interviewed K.T. in camera. The record reflects a discussion between counsel and the trial court regarding selection of a time for such an interview that would not disrupt K.T.'s school attendance or schedule, and that she was on Spring Break at the time of the hearing. With the exception of arguments we will address below, the bulk of Father's arguments amount to an invitation to reweigh the evidence. We decline such an

9

invitation, however, in recognition of the appropriate standard of review which precludes such an exercise. *See Irvin v. Hood*, 712 N.E.2d 1012 (Ind. Ct. App. 1999).

I.C. § 31-19-14-2 (West, Westlaw current with all 2013 legislation) provides for the challenge of an adoption decree within a certain timeframe if a person's parental rights are terminated by the entry of the adoption decree. Such is the case here. The adoption decree will be sustained, however, unless the person establishes by clear and convincing evidence that setting aside the decree is in the child's best interests. *Id.*

Father raises several issues on appeal that he contends support setting aside the decree, but he did not present them first to the trial court. Father challenges the sufficiency of the adoption petition itself, alleging that the petition does not contain the requisite language addressing a criminal background check for Adoptive Father. Unlike a home study, which may be waived in certain circumstances, (I.C. § 31-19-8-5)(West, Westlaw current with all 2013 legislation), a trial court may not waive a criminal history check. I.C. § 31-19-2-7.3 (West, Westlaw current with all 2013 legislation) ("[a] court may not waive any criminal history check requirements set forth in this chapter"). Father has, however, waived this argument for purposes of appellate review, because he failed to raise it at the hearing or in his motion to dismiss the adoption petition.[1] *See Thalheimer v. Halum*, 973 N.E.2d 1145, 1150 (Ind. Ct. App. 2012) ("[w]aiver is a threshold issue because generally a party is precluded

---

[1] Father contended in his motion to dismiss the adoption petition that 1) he did not consent to the adoption, 2) the adoption was not it K.T.'s best interests, 3) he was asserting his rights to visitation with K.T., and 4) the trial court did not have the right to terminate his parental rights to K.T.

from presenting an argument or issue to Indiana appellate courts unless the party first raised that argument or issue to the trial court").

We are mindful of the need to strictly construe adoption statutes, as they are in derogation of common law. *In re Adoption of A.M.*, 930 N.E.2d 613 (Ind. Ct. App. 2010. Nevertheless, the alleged deficiency would not support a finding that setting aside the adoption petition would be in the K.T.'s best interests. "Although the adoption statute is to be strictly construed the statute is not to be so strictly construed as to defeat its purposes." *In re Adoption of A.M.*, 930 N.E.2d 613, 617 (Ind. Ct. App. 2010). Father was requesting the establishment of visitation with K.T. knowing that both he and R.H. had a class A felony conviction, and Mother's class D felony conviction was revealed during direct examination at the hearing. While we do not condone the failure to comply with statutory directives and requirements, we find the non-compliance here to be negligible when viewing the process as a whole in this situation. We are unpersuaded by Father's arguments, which have been waived, and find no reversible error here.

Father also argues that the trial court erroneously granted Adoptive Father's motion to waive the home study. Father claims that he did not receive notice of the motion until after it had been granted, and contends that it was erroneously granted because Adoptive Father did not meet the statutory criteria. I.C. § 31-19-8-5(c) (West, Westlaw current with all 2013 legislation) provides in pertinent part that a trial court hearing an adoption petition may waive the home study report if one of the petitioners is a stepparent or grandparent of the child.

Adoptive Father is neither K.T.'s stepparent nor grandparent.  This argument, however, like the others, is waived because it was not presented first to the trial court.

Judgment affirmed.

BAKER, J., and VAIDIK, J., concur.